CHARLES SIMMONS, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The general rule that a witness can not be impeached by proof of inconsistent statements without first laying the proper foundation for the introduction of such evidence, applies to written statements or testimony reduced to writing and signed by a witness before a committing magistrate; but before such testimony can, for the purpose of impeachment, be read to the jury, it must be produced and shown to the witness, and his attention called to his contradictory statements contained in the written evidence, and his oral testimony. Without showing the witness the written evidence and allowing him to read it, he cannot be cross-examined as to its contents with a view of impeachment.

2. In cases of murder, according to strict rule, it seems, that the homicidal act, or the act which is the efficient cause of death, must be alleged to have been done with a premeditated design to effect the death of the deceased; and where this is not done the indictment is defective.

Writ of Error to the Circuit Court for Volusia county.

The facts of the case are stated in the opinion of the court.

*J. D. Broome, Jr.*, for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MABRY, J.:

The plaintiff in error was indicted by a grand jury in Volusia county for the murder of one Blue Steel, and after arraignment and trial was found guilty by a petit jury of the offense for which he stood indicted.

Omitting the formal parts of the indictment, it charges that the defendant, Charles Simmons, on the 16th day of October, 1892, in Volusia county, Florida, "with force and arms at and in the county of Volusia aforesaid, unlawfully and from a premeditated design to effect the death of a man named Blue Steel, whose further name is to the grand jury unknown, in•and upon said Blue Steel, whose further name is unknown to the grand jurors, an assault did make, and a certain pistol loaded with gunpowder and one leaden bullet, and by the said Charles Simmons had and held in his hand he, the said Charles Simmons, did then and there unlawfully and from a premeditated design to effect the death of the said Blue Steel, whose further name is to the jurors unknown, shoot off and discharge at and upon the said Blue Steel, whose further name is to the jurors unknown, thereby and by thus striking the said Blue Steel, whose further name is to the grand jury unknown, with the said leaden bullet, inflicting on and in the right side of the head of the said Blue Steel, whose further name is to the jurors unknown, one mortal wound of a depth and breadth to the jurors unknown, of which mortal wound the said Blue Steel, whose further name is to the grand jurors unknown, then and there instantly died. And so the jurors aforesaid, upon their oaths aforesaid, do say that the said Charles Simmons, in the manner and by the means and from a premeditated design to effect the death of the said Blue Steel," etc., him, the said Blue Steel, did kill and murder, against the form of the statute, etc.

After having a motion in arrest of judgment and for a new trial decided adversely to him, plaintiff in error sued out a writ of error from the final judgment entered, and brings the record before us.

To maintain her case the State introduced as a witness one Frank Battle, who detailed the circumstances of the death of the deceased, Blue Steel. The scene of the homicide was a railroad camp, and time, the early part of the night. The witness Battle did not stay in the camp, but was at the time on a visit to his brother, who had a tent there. The witness stated that there was a crowd of men about one hundred yards from his brother's tent, and a man called Sunny White got shot in this crowd and ran up to the tent with blood coming from the side of his head. Another party, named Brown, from whose hands witness managed to jerk a shot gun, said "find out the right man —shoot in the crowd," and another man (Garner) said "must I shoot in the crowd?" and fired into the crowd. Garner and another man (Jackson) fell in the mouth of the tent, and at that time Simmons, the accused, came up with his pistol in his hand waiving it about. The deceased said to the accused "put your pistol in your pocket, two men are shot down here, put your pistol in your pocket." He goes up to Charley and catches hold of him and tells him "put your pistol in your pocket," and Charley says "you son of a bitch, I will shoot your brains out," and he shot him right through the head. On cross-examination the witness was asked if the deceased did not try to take the pistol out of the hands of the accused, and answered that he did not. He said that the deceased went up to the accused and told him to put the pistol in his pocket. The witness was then asked if he did not testify on a preliminary hearing of the case before Justice Nelson in New Smyrna, and answered that he did. He was then shown testimony taken on a preliminary hearing before Justice Nelson, and stated that it was the same testimony that he gave; he also said that he put

his name to and swore to the testimony, and thought that the mark to the testimony shown him was his, but he could not read. The witness was then asked if he did not testify that the deceased tried to take the pistol from the hands of the accused, and was not able to do so, and answered "No sir; I testified that Blue Steel came up to Charley and caught hold of him and told him to put his pistol in his pocket, and Charley shot him." On being further asked, on cross-examination, if he did not swear on the preliminary examination that the deceased tried to take the pistol out of the hands of the accused, but was not able to do so, stated that if he did he had no recollection of it. No objection was made to the questions propounded to the witness as to what he did swear to on the preliminary examination before the justice.

When the time came for the accused to put in his testimony, he offered as evidence the sworn statement of the witness signed before the justice of the peace on the preliminary trial of the accused, and the court ruled it out, to which ruling the accused excepted. This statement sworn to and signed by the witness recites that "Frank D. Battle being duly sworn says: * * * On the night of the killing, Charles Simmons and Blue Steel were standing side by side; Blue Steel tried to take Simmons' pistol out of his hand, and was not able to do so. Simmons jerked the pistol away and stepped back two steps and said, you son of a bitch I will blow your damned brains out, and then fired at Blue Steel with the pistol and killed him. All this occurred in Volusia county, on Saturday night, October 16th, 1892." This testimony should not have been excluded by the court from the consideration of the jury. The witness says he could not read, but as we understand the bill of exceptions, he identifies the written

testimony as being the same that he swore to and signed before the justice of the peace. He recognizes the signature to it as being his, and we must consider the written statement shown to the witness as the one prepared by the justice of the peace and signed and sworn to on the preliminary trial. The purpose of introducing this statement in evidence was, of course, to show the discrepancy between it and the statement of the witness on the trial, and thereby to discredit his evidence with the jury.

Where a witness does not distinctly admit on cross-examination that he has made a former statement inconsistent with his present evidence, our statute permits such statement to be put in evidence upon proof of the circumstances of the supposed inconsistent statement sufficient to designate the particular occasion, and the witness being asked whether or not he made such statement. Revised Statutes, sec., 1102. The general rule that a witness cannot be impeached by proof of inconsistent statements without first laying the proper foundation for the introduction of such evidence, applies also to written statements or written testimony of witnesses taken down before a committing magistrate. Such testimony can not, for the purpose of impeachment, be read to the jury, unless it be produced and shown to the witness, and his attention called to the contradictory statements, in order that he may explain them if he can. Where the testimony of a witness before a committing magistrate has been reduced to writing and signed by him, he can not, of course, be cross-examined as to the contents of this testimony without showing him the evidence or allowing him to hear it read. The rule on this subject has been regarded as settled since the Queen's Case (2 Brod. & Bing., 284). In the case before us the witness

was shown the sworn statement. and after admitting that it was the one that he had made and signed, was asked in reference to the statements he did make on the committing trial, he having stated that he could not read. The statement, we think, was clearly admissible under the rule, and the court should have permitted it to be read to the jury. Floyd vs. State, 82 Ala., 16; Gunter vs. State, 83 Ala., 96; People vs. Donovan, 43 Cal., 162; Gaffney vs. People, 50 N. Y., 416; Ortiz vs. State, 30 Fla., 256, 11 South. Rep., 611. The contradiction contained in the two statements was entirely a question for the jury and not for the court. We can not say it was not material. Payne vs. State, 60 Ala., 80.

After verdict and before sentence, the accused made a motion in arrest of judgment on the ground that the indictment charges no crime, inasmuch as. it charges no malice or intent to commit a crime, and this motion was overruled by the court. It can not be said that the indictment charges no malice or intent to commit a crime, as the expression, premeditated design, includes malice and intent. There is however a defect about this indictment which on casual glance will appear highly technical, but which, when examined in the light of authority, becomes more real. We do not refer to the uset of the statutory words "premeditated design" in alleging malice aforethought, as required in the common law form of indictment for murder. The correctness of the departure from the old form, and the holding it to be insufficient, as was done in Denham vs. State, 22 Fla., 664, is questionable, but that decision has been made and we do not here call it in question. The present Chief-Justice did not participate in the decision of the Denham case. The objection to the indictment before us that is well founded, and which is

urged by counsel for the plaintiff in error in the argument of the case here, is that the homicidal act is not alleged to have been done with a premeditated design to effect the death of the deceased. The common law precedents all show that the act which is the efficient cause of the death must be charged to have been feloniously done, and there are authorities holding that such allegations are necessary, and without them an indictment will be bad. State vs. Feaster, 25 Mo., 324; State vs. Harrell, 97 Mo., 105; Respublica vs Honeyman, 2 Dallas (Penn.), 228; Sarah vs. State, 28 Miss., 267; State vs. Duvall, 26 Wis., 415; Maile vs. Commonwealth, 9 Leigh, 661. Under the Denham case it seems an allegation that the homicidal act was done with a premeditated design to effect the death would be sufficient under our statute. The indictment here does not come up to the requirement in this respect. Transposed and reduced to the fewest words necessary to convey its meaning, it alleges as follows: That the accused with force and arms, unlawfully and from a premeditated design to effect the death of the deceased, made an assault upon him; and that the accused unlawfully and with a premeditated design to effect the death of the deceased, shot off and discharged at and upon him a certain pistol then in the hand of the accused and loaded with gunpowder and leaden ball, thereby and by thus striking the deceased with said leaden ball, inflicting on and in the right side of his head one mortal wound, the depth and breadth not known to the grand jurors, of which wound *the said deceased then and there instantly died.

The homicidal act or efficient cause of the death, that is the penetration of the leaden bullet and the infliction of the mortal wound, are not charged to have been done with a premeditated design to effect death

According to the view of the authorities cited, this would be necessary in an indictment for murder in the first degree. The State attorney can avoid this error in framing a new indictment.

The judgment is reversed and the cause remanded; and the accused will remain in custody to await the further action of the court.