SARAH NEWTON, ALIAS SARAH VANDYKE, AND JAMES NEWTON, PLAINTIFFS IN ERROR, v. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. An indictment for murder in which a person is charged as principal in the second degree, though not in the form prescribed by accepted precedents, if the charge is set forth in such language and form as to enable a person of common understanding, to know what was intended, and the person thus charged was not, thereby prejudiced or embarrassed in his trial, and runs no risk, because thereof, of a second indictment for the same offense, is, under the operation of our curative statutes, sufficient to withstand a motion in arrest of judgment.

2. Where in a trial for murder a witness testified that he had a conversation with the deceased two or three days after he was shot, and five or six days before he died, in which the deceased said to the witness "Oh, Mr. Cade, I am going

to die, Sarah Newton shot me and I am going to die,"
to which the witness replied, "I don't think you are going
to die," and the deceased said to him, "Yes, I know I will,"
and the deceased further said that James Newton was fix-
ing to shoot him, and that he was watching Sarah Newton,
and Sarah shot him from the side, and that Sarah shot
him first, and where it also appears from the testimony ·
of the attending physician that deceased was in a very
critical condition, the statements of the deceased to the
witness were properly admitted in evidence as dying dec-
larations.

3.  In charging a jury upon the law of murder, the separate
elements essential to constitute the crime should be clearly
stated to the jury, and in such manner, as not to render it
possible for the jury to think that any disputed fact is
thereby assumed to be true.

4   When the evidence is such that the jury might reasonably
convict the defendants of a lower degree of unlawful homi-
cide than murder in the first degree, it is erroneous to so
charge the jury as practically to restrict them to a verdict
of murder in the first degree, or to one of acquittal.

This case was decided by Division B.

Writ of Error to the Circuit Court for Volusia County.

The facts in the case are stated in the opinion of the
Court.

*U. M. Bennett,* for Plaintiffs in Error.

*W. H. Ellis,* Attorney General, for the State.

HOCKER, J.  On the 10th day of November, 1905, at
the Fall term of the Circuit Court of Volusia county Sa-
rah Newton, alias Sarah VanDyke, and James Newton
were indicted in that court for the murder of one Will

Jones, the said Sarah as principal in the first degree, and the said James as principal in the second degree. After stating the assault by Sarah with a shot gun on the 29th of September, 1905, in Volusia county, thereby inflicting upon Jones one mortal wound, in the usual form, it alleges "of which said mortal wound, inflicted in manner and form aforesaid, the said Will Jones did languish and languishing did live from the 29th day of September, 1905, to the 8th day of October, 1905, on which said 8th day of October, 1905, the said Will Jones of the said mortal wound inflicted in manner and form aforesaid, then and there died, the said James Newton being then and there feloniously present at the commission of the said felony and murder from a premeditated design to effect the death of the said Will Jones, aiding, abetting, assisting, inciting, comforting, counseling and procuring the said Sarah Newton, alias Sarah VanDyke unlawfully, feloniously and from a premeditated design to effect the death of the said Will Jones, the said Will Jones to kill and murder in the manner and form and by the means aforesaid." The indictment then concludes in the usual form charging both of the parties with the murder of Will Jones. On the same day the court appointed a member of the bar to represent the defendants, and being arraigned they pleaded not guilty. On the 15th of November, 1905, the defendants were put on trial, and just before the conclusion of the testimony the court removed the attorney who had been appointed to represent the defendants, for a good and sufficient reason and appointed the attorney to represent them who has brought their case on writ of error to this court. The defendants were both convicted of murder in the first degree without recommendation to mercy, and sentenced to be hung.

From this sentence and judgment the writ of error was sued out.

There was no demurrer to the indictment or motion to quash the same, but after conviction a motion in arrest of judgment was made and overruled by the court, which ruling was excepted to and is the basis of one of the assignments of error. In the able brief of the counsel of the plaintiffs in error the fourth and fifth grounds of the motion in arrest are the only ones which are argued here. These grounds are: "4th. Because the said indictment contains no sufficient allegations charging the defendants Sarah Newton (alias Sarah VanDyke) and James Newton with any offense against the statute laws of Florida, all the statements of said indictment relative to the said James Newton being merely by way of recital," and "5th, Because it does not appear by said indictment that the defendant James Newton committed any offense within the county of Volusia and State of Florida."

There can be no question but that the allegations of the indictment connecting James Newton with the unlawful homicide are a departure and an unnecessary one, from all the forms which at common law were regarded as essential to charge a principal in the second degree with the crime of murder. The record does not afford any apology for such a departure, and consequently for the burden thus laid upon the courts of attempting to reconcile it with the precedents and forms which are easily accessible to every prosecuting officer, and which, when followed, save all debate and all temptation to afford a defendant anything less than the most accurate statement of facts constituting the crime with which he is charged. It will be noticed that this indictment instead of using the indicative to indicate his presence at the

commission of the crime as is always usual, uses the present participle "being," and that although there are two dates in the indictment, the one indicating the day when the assault was committed, and the other when Jones died from the effects of the assault, when the alleged murder was consummated, yet that James Newton was connected with the alleged murder only by the phrase "then and there." While the former departure might not have been absolutely vicious at common law (1 Bishop's New Crim. Proc. sections 566 and 557), the last was regarded as insufficient and repugnant as to the allegation of time. 2 Hawkins' Pleas of the Crown, Chap. 23, sections 88 and 89. It is in this authority stated that when this form of indicting a principal in the second degree is used, under these circumstances, that it should be alleged he "was present aiding," etc., in the manner alleged. But it is unnecessary under our law to allege the crime in this form. Principals in the first and second degree may both be indicted as principals, and these difficulties are avoided. 2 Bishop's New Crim. Proc. section 3; Bishop's Directions and Forms (2nd ed.) sections 114, 115; Myers v. State, 43 Fla. 500, text 520, 31 South. Rep. 275. The question which we must determine in this case is whether the indictment charges James Newton with the crime of murder "so plainly that the nature of the offense may be easily understood by the jury," (section 2892, Rev. Stats of 1892), or whether it "is so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense, or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense." (Section 2893 Rev. Stats. of 1892). For if the indictment be insufficient in the particulars thus indicated it could not be regarded as sufficient under sections 10 and 11 of the

Bill of Rights which require that an indictment shall inform the accused of "the nature and cause of the accusation." If a demurrer had been interposed to this indictment at the proper time, the trial judge would probably have sustained it and required the pleader to frame one in accordance with the settled precedents, and thus have avoided the difficulty of a judicial application of the very general and indefinite language of the quoted sections of the statute law, for it must be apparent if the settled forms of indictments are to be capriciously ignored by pleaders who substitute therefor, in charging crime, whatever form of expression may suggest itself, it will be well nigh impossible for the courts to formulate any certain rules for applying the statutes. The evident truth of this statement becomes manifest when we consider that the varying opinions of the best minds upon speculative questions are largely due to different understandings of the meaning of words and phrases. Inasmuch however as the questions before us are presented in a motion in arrest of judgment, we are compelled to make an application of the quoted sections of the statute. In the case of Adams v. State, 28 Fla. 511, 10 South. Rep. 106, it is said: "In an indictment for murder it is essentially necessary to set forth particularly the manner of the death and means by which it was effected, but in stating the facts which constitute the offense no technical terms are required, and an averment of the manner and means by which the deceased came to his death in concise and ordinary language, and in such a way as to enable a person of common understanding to know what was intended, is sufficient." The doctrine of this case is quoted and applied in Michael v. State, 40 Fla. 265, 23 South. Rep. 944. Although there are other criminal cases in which we have endeavored to apply

these curative sections of the statute law, yet as none of our cases afford an analogy to the one at bar, it is unnecessary to refer to them. It seems to us that a person of common understanding would interpret the language of the indictment to mean that James Newton was present aiding, etc., Sarah Newton when she made the assault on Will Jones, and not that he was present after that time aiding, etc., Jones to languish and die; that James Newton was not prejudiced or embarrassed in his trial and runs no risk of a second indictment for the same offense, and taking this view of it we hold that the indictment was sufficient to withstand a motion in arrest of judgment.

An assignment of error is based on the refusal of the court to strike out the testimony of J. E. Cade as to the dying declaration of Will Jones. Mr. Cade testified that he had a conversation with Will Jones on Monday after he was shot (which was two or three days afterwards) in which Jones in answer to a question as to how he felt, stated: "Oh, I am going to die, Mr. Cade, I am going to die. Sarah Newton shot me and I am going to die." Mr. Cade said to him: "I don't think you are going to die." Jones replied, "Yes I know I will." Jones further stated to Mr. Cade that James Newton was fixing to shoot him and that he was watching Sarah Newton, and Sarah shot him from the side, and that Sarah shot him first. It is evident from the testimony of the physician who attended Jones on the Saturday previous that he was in a very critical condition. Mr. Bennett moved to strike out this testimony of Mr. Cade on the ground that it was nothing but the verbal statements of a man, a very weak man, and one very badly injured, and that he was not under oath, and the defendants were not present at the time. The motion was denied and the defendants ex-

cepted. We are of the opinion that applying the doctrine of Dixon v. State, 13 Fla. 636, there was no error committed in denying the motion as under the circumstances as shown, the trial judge had sufficient cause to be satisfied that at the time Jones made these statements to Cade he (Jones) evidently believed he was without hope of recovery. Clemmons v. State, 43 Fla. 200, 30 South. Rep. 699.

The court charged the jury "If you believe from the evidence beyond a reasonable doubt that the defendant Sarah Netwon, alias Sarah VanDyke fired the fatal shot trom a premeditted design to effect the death of the said Will Jones, you will find her guilty of murder in the first degree as charged in the indictment." The objection to this charge is that it assumes that Sarah Newton fired the fatal shot, a fact which she denied. We think it unnecessary to say more than that it would undoubtedly have presented their duty to the jury in a clearer form to have instructed them to the effect, if they believed from the evidence beyond a reasonable doubt that Sarah Newton shot Will Jones, and that he died from the effects of said shooting as alleged in the indictment, and that she shot Jones from a premeditated design to effect his death, they should find her guilty of murder in the first degree. The two prominent facts essential to constitute murder in the first degree in this case, viz: the shooting and killing, and the shooting and killing from a premeditated design, would thus be presented to the jury, and all difficulty of construction avoided. The same remarks are applicable to the 6th charge given by the trial judge.

The trial judge charged the jury as follows: "If you find both defendants guilty, the form of your verdict will be, 'we, the jury, find both defendants guilty of murder in the first degree as charged in the indictment,'" and, also,

"If you find one of the defendants guilty and the other not guilty, the form of your verdict will be 'we, the jury, find the defendant (naming him or her) guilty of murder in the first degree, as charged in the indictment and the defendant (naming the other defendant) not guilty.'" These charges are assigned as error. The trial judge did not charge the jury upon any degree of homicide except murder in the first degree, and by these charges and by one instructing the jury to acquit if they were not satisfied of the guilt of the defendants or either of them beyond a reasonable doubt, the jury were practically instructed to convict the defendants of murder in the first degree or acquit them. We have carefully examined the testimony and are satisfied that there was ample reason why the jury should not have been thus restricted as to the degree of unlawful homicide of which they might find the defendants guilty. These charges were, therefore, injurious to the defendants and erroneous.

We do not think it necessary to notice any other assignment of error. Because of the errors which have been indicated the judgment of the Circuit Court in the case of each of the defendants is reversed at the cost of the county of Volusia, and the cause remanded for further proceedings in accordance with law.

TAYLOR and PARKHILL, JJ., concur.

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.