EDDIE PELL, *Plaintiff in Error*, v. STATE OF FLORIDA, *Defendant in Error*.

En Banc.

Opinion filed April 30, 1929.

*Thomas Palmer, W. B. Dickenson, E. T. Shurley, Paul Lake, Carey D. Landis* and *Leonardy & Leonardy,* for Plaintiff in Error;

*Fred H. Davis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

BROWN, J.—The writ of error in this case is to a judgment of the Circuit Court of Volusia County, convicting the plaintiff in error of murder in the second degree. There was a motion in arrest of judgment in which the validity of the indictment was challenged. Murder in the first degree is defined by our statute in the following language:

> The unlawful killing of a human being, when perpetrated from a premeditated design to effect the death of the person killed or any human being, or when committed in the perpetration of or in the attempt to perpetrate any arson, rape, robbery, or burglary, shall be murder in the first degree, and shall be punishable by death. Sec. 7137, Comp. Gen. Laws; Sec. 5035, Rev. Gen. Stats.

The indictment, eliminating the statement of venue and style of the case, was as follows:

> The grand jurors of the State of Florida, empaneled and sworn to inquire and true presentment make, in and for the body of the County of Volusia, upon their oaths do present, that Eddie Pell, of the County of Volusia and State of Florida, on the 8th day of July in the year of our Lord one thousand, nine hundred and twenty-seven, in the county and State aforesaid, unlawfully and with a premeditated design to effect death, did kill D. E. Walker, by shooting him with a shot gun; and that the said Raymond Pell, with a premeditated design to effect death, was then and there present, aiding, abetting, comforting, procuring, encouraging, counselling and commanding the said Eddie Pell, the murder aforesaid, to do and commit, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Florida.

That part of the indictment in this case which charges Raymond Pell as a principal in the second degree, may be eliminated from consideration, as he was acquitted, and Eddie Pell, who was charged as principal in the first degree, and convicted, is the sole plaintiff in error here. Eliminating that portion applying to Raymond Pell, the indictment in this case follows quite closely the form suggested in the opinion in Reed v. State, 113 So. R. 630, 635, 94 Fla. 32, 45. While this suggestion was more or less apposite to the point being discussed, it was not essential to the decision in that case, and hence mere *obiter dictum* and without force as a precedent. However, inasmuch as the opinion in that case was concurred in by all the Justices, without dissent, it is quite probable that the State Attorney felt thereby justified in following the form of indictment therein suggested.

As against the objections made in the motion in arrest in this case, we think that the form of indictment used here was entirely sufficient, and constitutes a decided improvement over the ancient ponderous common law form.

This form, as well as the one suggested in the Reed case, might have been improved upon, and more meticulously accurate, if the charging part had read as follows:

That Eddie Pell, on the 8th day of July, A. D. 1927, in the county and State aforesaid, unlawfully and from a premeditated design to effect the death of D. E. Walker, did kill said D. E. Walker by shooting him with a shot gun, etc.,

But for the reasons hereinafter given, we deem the indictment as written good as against a motion in arrest.

The contention of plaintiff in error, as we take it, is to the effect that this form is sufficient except in one particular, and that is the omission of the words, "of said D. E.

Walker," the person killed, after the words "premeditated design to effect death." But is not the meaning of the indictment perfectly plain, with these words omitted? We think so.

Under our statute, "the unlawful killing of a human being, when perpetrated from a premeditated design to effect the death of the person killed, or any human being," is murder in the first degree.

The indictment in this case charged that the defendant, on a certain date and in the named county, "unlawfully and with a premeditated design to effect death, did kill D. E. Walker, by shooting him with a shot gun—contrary to the form of the statute in such case made and provided," etc.

The writer is disposed to think this indictment would have been sufficient as against the motion in arrest of judgment even if the words "to effect death," had been omitted, so that the charging part would have read: "unlawfully and with a premeditated design, did kill D. E. Walker by shooting him with a shot gun, contrary to the form of the statute," etc. In either manner of statement, there cannot possibly be any reasonable doubt under the ordinary rules of legal and grammatical construction, as to just what the indictment charges and means. The law presumes that a man intends to do what he actually does. So, as the indictment charges that the defendant killed the deceased by shooting him with a gun, the presumption is that he intended to kill *him*, and not some other person or animal as has been contended. As the indictment charges that the defendant killed the deceased by shooting him with a gun, and that he killed him "unlawfully and with a premeditated design to effect death," this quoted clause must be construed in connection with the sentence as a whole, and so construed it means of course that he killed him with the intent to kill him, and from a premeditated design. Such an indictment certainly

charges every element of murder in the first degree as defined by the short and simple, yet comprehensive and sufficient, definition prescribed by our statute, which, by the way, means practically the same thing as the common law definition of murder, which is, "the unlawful killing of a human being with malice aforethought." See Bird v. State 18 Fla. 493.

Could the jury or the defendant have been misled by this indictment, or mistaken its meaning? We think not. This form of indictment is much less likely to mislead or confuse than the archaic, cumbersome and uselessly meticulous common law form. Of course the old form is legally sufficient, as we have held in Daniels v. State, 52 Fla. 18, 41 So. R. 609, and several other cases, but since we have adopted in this State a simple statutory definition of murder in the first degree, it is no longer necessary to use the old common law form, with its unnecessarily detailed allegations, such as that the defendant then and there did make an assault with a certain gun then and there held in his hand, and then and there loaded with gunpowder and leaden bullets, and that he did then and there shoot off and discharge said gun at and upon the deceased, thereby and thus striking the body of said deceased with said leaden bullets, thereby inflicting on and in the body of said deceased one mortal wound, from which said wound he did languish, and languishing, died, etc. Such needless particularity of averment tends not only to confuse the mind but also to produce variance in proof, in respect to matters which are really immaterial, as pointed out in the Reed case, *supra.*

When we come down to the sensible use of plain everyday language, such as the man on the street (who often becomes the man on the jury) uses and understands, and such as is used in our statute defining the different degrees of homicide, and simply charge in an indictment that, in the county

and State aforesaid, "A. B. unlawfully and from a premeditated design to effect the death of C. D., did kill C. C. by shooting him with a gun," or cutting him with a knife, as the case may be, "contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Florida," we lose nothing of substance, pith or dignity, while we gain much in directness, lucidity and simplicity of statement, without omitting a single element of the crime charged.

Secs. 6063 and 6064, Rev. Gen. Stats., now appearing as Secs. 8368 and 8369, Comp. Gen. Laws of 1927, read as follows:

6063. Every indictment shall be deemed and adjudged good which charges the crime substantially in the language of the statute prohibiting the crime or prescribing the punishment, if any such there be, or if at common law, so plainly that the nature of the offense charged may be easily understood by the jury.

6064. No indictment shall be quashed or judgment arrested or new trial be granted on account of any defect in the form of the indictment, or of misjoinder of offenses or for any cause, whatsoever, unless the court shall be of the opinion that the indictment is so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense.

Under these statutes, this indictment is certainly sufficient, but it is probably good without them. Its brevity and conciseness, as compared with the old form, affords no just ground for criticism, so long as there is no sacrifice of certainty, that is, so long as every essential element of the

crime as defined by the statute is embraced in the indictment in plain, understandable language. No long or involved pleading is required of the defendant. Why require it of the State? The Constitution only requires that the "nature and cause of the accusation" be stated. "Fundamental reason," says Bishop, "constitutes the essence of all our rules of pleading; so that the only just change possible in them consists of the removal of excrescences which time and the carelessness of judicial practice have suffered to grow thereon." 1 Bishop Crim. Prac., 2nd ed., p. 277.

We are quite satisfied that everybody who read this indictment, including the court and jury and the defendant himself, knew just exactly what was intended to be charged as soon as they read it or heard it read. No objection was made to it until after the verdict. In Michael v. State, 40 Fla. 265, 23 So. R. 944, this Court said:

> In an indictment for murder it is essentially necessary to set forth particularly the manner of the death and the means by which it was effected, but in stating the facts which constitute the offense no technical terms are required, and an averment of the manner and means by which the deceased came to his death in concise and ordinary language and in such a way as to enable a person of common understanding to know what was intended, is sufficient.

This Court has frequently held that offenses defined by statute may be charged in the language of the statute, or in language of equivalent import; that it is not essential to follow the precise language of the statute, if its substance and meaning be charged.

Under the Alabama statute an indictment in the following language: "The grand jury of said county charge that before the finding of this indictment A. B. unlawfully and

with malice aforethought, killed W. R. by shooting him with a pistol, against the peace and dignity of the State of Alabama," was held sufficient. Burton v. State, 141 Ala. 32, 37 So. R. 435.

If the reasoning of the contention here made against the validity of this indictment be applied to the time-honored common law definition of murder, which is, that "murder is the unlawful killing of a human being with malice aforethought," the accepted definition would have to be held insufficient because it does not read: "Murder is the unlawful killing of a human being with malice aforethought against the human being killed." Yet this over-particularity of statement is not only unnecessary but would lead to a certain degree of inaccuracy, as a general definition, for it is well settled in this as well as other jurisdictions that one who kills one person, while attempting and intending with premeditated design (or malice aforethought) to kill another person, is guilty of murder in the first degree.

Upon motions in arrest of judgment for alleged defects in indictments or informations, the rule, announced in many decisions of this Court, is that the indictment should receive a liberal construction, and that even an informal or imperfect allegation of an essential fact will be deemed a sufficient averment of that fact. Smith v. State, 72 Fla. 449, 73 So. R. 354.

For these reasons we think the court below was justified in overruling the motion in arrest of judgment.

Plaintiff in error was convicted of murder in the second degree and given a life sentence. The evidence shows that plaintiff in error, together with his brother, Raymond Pell, were proceeding in the former's automobile to their home in Osteen and met D. E. Walker on the street, passing him without salutations from either. Arriving at home, the Pell brothers lodged the car in the garage, Walker proceeding

to a store opposite Pell's home. Eddie Pell went in to his house and was eating his midday meal when he was called by someone to the rear of the house. He went out, unarmed according to the testimony for the defense, but with a gun according to a witness for the State, and found Walker in his garage, undertaking to make a search thereof and engaged in an altercation with his brother Raymond. It appears from Raymond's testimony that Walker had stated that he had a search warrant and had been asked by Raymond to let him read it, which request was refused, the refusal being accompanied by voluble profanity and a blow in the face which knocked Raymond through the side door of the garage. This was seen by Eddie Pell, who remonstrated, and that Walker, cursing him and threatening to kill him, raised his pistol to shoot Eddie, who, undertaking to dodge the bullet from the pistol came within reach of an automatic shot gun, which was in the garage, with which he shot and killed Walker, firing two or three shots in quick succession into his body. He then went to the house of a nearby deputy sheriff and gave himself up.

There was evidence to the effect that a pistol such as he, an officer, usually carried, with certain chambers empty, was found near the hand of the deceased, lying in blood and sand according to the defendant's witnesses, but lying in clean sand according to testimony adduced by the State, and that an exploded shell of the same kind as those in the pistol was afterward found nearby. There was also evidence that some months prior to this fatal encounter Walker had endeavored to search plaintiff in error's car and had fired several shots at him and his brother, or the car, as they were leaving the scene, one of which struck the fender. There was also testimony showing threats by Walker against Pell and by Pell against Walker. The State introduced considerable evidence as to the physical conditions at the scene

of the homicide, and the position of the wounds on the body of the deceased, evidently for the purpose of showing that one of the shots entered from the rear, and to rebut the defendant's testimony as to how the killing took place. The State also produced testimony that the pistol of the deceased had rust in the barrel and no odor of powder about it, as tending to show that it had not been recently fired; that if the pistol had been fired it would have cleaned the barrel and left it free of rust. The defendant contended that the pistol had been lying in blood and sand after the deceased fell, and it was this which had given the appearance of rust in the barrel. In this connection, there was evidence that the defendant's counsel, at the preliminary hearing, had requested a witness for the State to remove by use of a clean handkerchief some of the substance attached to the inside of the barrel so that it could be examined and thus determine what it was, but that the request was not granted by the presiding magistrate.

During the course of the final argument in behalf of the defendant, his counsel, Mr. Thomas Palmer, sought to argue to the jury that inasmuch as the automatic pistol filed in evidence in the case had been in the custody of the State ever since the preliminary hearing, it was the duty of the State to have had the contents of the inside of the barrel analyzed, and that by reason of the revolver having been in the custody of the State the defendants had not had the contents analyzed for the benefit of the defendants. To this line of argument, the State Attorney objected, which objection was sustained by the court, and the court directed Mr. Palmer not to proceed with that line of argument to the jury. To this ruling defendants excepted, and same is assigned as error.

Under the circumstances shown by the evidence in this case, in making this argument counsel was, in our opinion,

within the bounds of that considerable degree of latitude which is allowed counsel in argument. And this, too, without any necessary reflection upon the State Attorney. The evidence of the State's witnesses, which he no doubt fully accepted, was to the effect that the pistol had been found lying in clean sand, and he therefore doubtless was satisfied in his own mind that the substance in the barrel was necessarily rust, and not blood, and that no microscopic examination was necessary. If he had had any doubt about it, he should, and no doubt would, have had the examination and test made. The State Attorney, as we have said, occupies a semi-judicial position, and it is his duty to endeavor to get at the real facts whether they lead to conviction or acquittal. But on the other hand, there was evidence for the defendant that the pistol had been lying in blood and sand, and counsel for defendant had therefore some ground to infer and believe that the substance in the barrel was blood that flowed into it after the shooting and that the State in whose custody it was, should have had it analyzed. The sincerity of counsel's belief was indicated by his request for examination at the preliminary trial. The language used by defendant's counsel in his endeavor to present this argument was not unparliamentary and did not indicate that it sprang from any animus toward, or desire to cast any reflection upon the State's counsel. The State having the closing argument, might have said in reply that under the circumstances it became the duty of the defendant to make formal application to the State Attorney or to the court for analysis by some qualified person of the substance in question, before making any criticism of the State's counsel for failure to have it done; that the State's testimony showed such an examination to be unnecessary in the opinion of counsel for the State, and hence no duty to have it done existed. Thus the court might without error have permitted

this argument, leaving it to counsel for the State to reply to the same in their closing argument. Yet we are not convinced that the court erred in not permitting it. A considerable degree of discretion is vested in our *nisi prius* judges in this matter of the arguments of counsel, and it is a discretion which is rarely abused; and, when it is, it is usually on the side of leniency and liberality as to the scope thereof, rather than that of too great a strictness. Counsel should usually be permitted to argue all reasonable inferences which may be drawn from the evidence, or any part thereof, but the due administration of justice requires that our trial judges should exercise with firmness their power and duty to keep the scope and character of argument within proper bounds, and their efforts to do so are to be commended rather than criticised. See Henderson v. State, 113 So. R. 689, 94 Fla. 318; Johnson v. State, 102 So. R. 549, 88 Fla. 461. It is sometimes a very delicate and difficult duty to perform. Objections to such arguments, like the one here in question, which might be said to fall within "the twilight zone," must be ruled upon promptly, and a mistake is inevitable now and then, but unless the ruling of the trial judge is clearly erroneous and prejudicial, reversal should not be predicated thereon.

As shown by the evidence, the search warrant was not made out and issued in duplicate, as required by the statute, Sec. 11 of Chap. 9321, Acts of 1923, now appearing as Sec. 8513, Comp. Gen. Laws. Only one copy was made and issued. The statute requires that "All search warrants issued shall be in duplicate, and said duplicate shall be delivered to the officer with the original warrant, and when the officer serves the warrant he shall deliver a copy to the person named in the warrant, or in his absence, to some person in charge of, or living on the premises," etc. The warrant must conform strictly to the requirements of the statute under which it is issued, otherwise it is void. 35 Cyc.

1267; Gildrie v. State, 113 So. R. 704, 94 Fla. 134. And evidence obtained by a search under a warrant which fails to comply with the provisions of the statute is not admissible in evidence. Gildrie v. State, *supra;* Agnello v. U. S., 269 U. S. 20, 70 Law ed. 145. ''When searches and seizures are made pursuant to the command of a search warrant, both the search warrant and the prerequisite oath or affirmation must conform strictly to the constitutional and statutory provisions authorizing their issue. This is true, because there is no process known to the law the execution of which is more distressing to the citizen or that actuates such intense feeling of resentment on account of its humiliating and degrading consequences.'' Jackson v. State, 87 Fla. 262, 99 So. R. 548.

When the search warrant which was found in the pocket of the deceased was offered in evidence by the State while making out its case in chief, the court sustained the defendant's objection to its admission. But the defendant's testimony showed that the deceased had said he had a search warrant, and later, in the course of the State's testimony in rebuttal, the State Attorney again offered in evidence the search warrant, ''which,'' he stated, ''accounts for the mission upon which the dead man was at the time of the shooting.'' The defendant again objected upon the ground that it had been proven that the warrant had not been issued as required by the statute; also upon the ground ''that the offer is unlimited, and if offered at all at this stage of the trial, the purpose for which it is offered must be set forth.'' The objection was overruled, and the warrant admitted without comment by the court, and read in evidence. Nor was anything said about it by the court in instructing the jury. We think that in this action the court was in error. If the illegal search warrant was admissible at all, and we are inclined to think that it was, when admitting it the court

should have instructed the jury to the effect that it was admitted in evidence only for whatever light it might shed upon the mission or purpose of the deceased in going upon the defendant's premises, but not for the purpose of showing any legal justification for such action, or for any attempted search of the premises, on the part of the deceased. The brief statement made by the State Attorney when offering the search warrant the second time was not sufficient to dispense with explicit instructions by the court to the jury, confining their consideration of it strictly to the purpose for which it was admitted. Without such instructions the jury might well have concluded that the court considered the search warrant legal and admissible generally, and sufficient to justfy the deceased in his attempted search of the defendant's garage.

Testimony of several witnesses in behalf of the State on rebuttal was admitted to the effect that the deceased was not in the habit of using profane language. Some of this testimony was admitted without objection by the defendants, but some of it was objected to. Aside from the abstract question as to the admissibility *vel non* of such evidence (Wigmore Evid., 8nd ed., Secs. 92-99, 375, et seq.), the defendants were not in a position to object, as they had let down the bars by eliciting testimony from witness Brooks (page 513 of transcript) that the deceased had been in the habit of using profanity.

The charge of the court on the subject of self-defense, closed with these words: "And therefore the defendant, Eddie Pell, could not justify his acts as being in self-defense, unless he used all reasonable means within his powers, consistent with his own safety, to avoid the danger and divert (avert) the necessity of killing the deceased, and you are to determine from the evidence before you whether he used such reasonable means."

This charge was excepted to and assigned as error. It nowhere contained any qualification with reference to the defendant's duty to retreat. The charge was correct as far as it went (Doke v. State, 71 Fla. 633, 71 So. R. 915), but, under the evidence in the case, showing that the difficulty occurred on the defendant's own premises, upon which the deceased had entered for a purpose not authorized by law, the charge on this subject should have also covered the proposition that, if a person is not the aggressor in a difficulty, and is violently assaulted on his own premises, he is not obliged to retreat in order to avoid the difficulty, but may stand his ground and use such force as may appear to him as a cautious and prudent man to be necessary to save his life or to save himself from grievous bodily harm.

This Court, in Danford v. State, 53 Fla. 4, 43 So. R. 593, said:

It cannot be denied that it is the duty of a party to avoid a difficulty which he has reason to believe is imminent, if he may do so without apparently exposing himself to death or great bodily harm (Stafford v. State, 50 Fla. 134, 39 So. R. 106; Snelling v. State, 49 Fla. 34, 37 So. R. 917; Peaden v. State, 46 Fla. 124, text 135, 35 So. R. 204), and that whatever qualification this principle may in application have will depend upon the circumstances of each particular case. Allen v. United States, 164 U. S. 492, text 498, 17 Sup. Ct. R. 154; Wharton on Homicide (2nd ed.) Sec. 485. For instance, a man violently assaulted in his own house or on his premises near his house is not obliged to retreat, but may stand his ground and use such force as may appear to him as a cautious and prudent man to be necessary to save his life or to save himself from great bodily harm. Allen v. United States, *supra*. A person whose life has been threatened is not obliged to quit his busi-

ness to avoid a difficulty. Ballard v. State, 31 Fla. 266, 12 So. R. 865. But he cannot lie in wait for his adversary. Smith v. State, 25 Fla. 517, 6 So. R. 482. In cases where a combat is mutually sought, the duty of retreating seems to apply to both parties, for both being in the wrong, neither can right himself without retreating. I Bishop's New Cr. Law, Secs. 869, 870.

See also Graham v. State (Ohio), 18 A. L. R., 1272; Beard v. U. S., 158 U. S. 550, 39 Law ed., 1087.

The right to stand one's ground without retreating when violently assaulted in his own home or on his own premises, in a difficulty which he did not provoke, should form an element of the instructions on the law of self-defense in cases where there is evidence tending to show such state of facts. People v. Hecker (Cal.), 30 L. R. A. 403, 409.

The first and second requested charges for the defendant dealt somewhat with this question of the defendant's being upon his own premises, in connection also with the subject of threats by the deceased, and apparent necessity to take life in self-defense, but as they omitted the element of freedom from fault in bringing on the difficulty, or of the defendant not being the aggressor, there was no error in their refusal. The other requested charges were covered by the court's general charge.

For the errors pointed out, the judgment must be reversed.

Reversed.

TERRELL, C. J., AND WHITFIELD, ELLIS AND STRUM, J. J., concur.

BUFORD, J., concurs in the conclusion.

WHITFIELD, J., (concurring): In Denham v. State, 22 Fla. 664, text 679, it is said that ''murder in this State is

no longer a common law offense, but it is a statutory one,"
and that to "distinguish murder in the first degree as des-
ignated in the statute, it must be charged in the indictment,
in the language of the statute, as having been perpetrated
'from a premeditated design to effect the death of the per-
son killed.'" See Chap. 1637, Acts 1868, Sec. 5035, Rev.
Gen. Stats. 1920, Sec. 1, Chap. 8470, Acts 1921,. Sec. 7137,
Comp. Gen. Laws 1927. It had previously been held that
"where the offense is one created by statute, it must be
charged in the indictment in the very language of the stat-
ute, or in the language of equivalent import. An indict-
ment for an offense prescribed and defined by statute, must
state all the facts and circumstances which constitute the
offense, or the party indicted is not brought within the pro-
visions of such statute." 17 Fla. 381. See also 30 Fla. 229;
34 Fla. 181; 58 Fla. 68.

These judicial statements should be considered in connec-
tion with a subsequent statutory enactment, as Sec. 2892 of
the Rev. Stats. of 1892, that "every indictment shall be
deemed and adjudged good which charges the crime sub-
stantially in the language of the statute." Sec. 3961, Gen.
Stats. 1906, Sec. 6063, Rev. Gen. Stats., 1920, Sec. 8368,
Comp. Gen. Laws 1927.

The statute defines murder in the first degree as "the
unlawful killing of a human being, when perpetrated from
a premeditated design to effect the death of the person killed
or any human being." The charge is that the defendant
"with a premeditated design to effect death did kill D. E.
Walker, by shooting him with a shot gun."

Such allegation "charges the crime substantially in the
language of the statute," and the language used is of equiv-
alent import to the statutory definition of the crime of mur-
der in the first degree. The indictment informs the accused
of the nature and cause of the accusation against him, see

Sec. 11, Declaration of Rights, and is not vague or indefinite so as to mislead the accused or expose him to the danger of a new prosecution for the same offense. See 58 Fla. 54; 74 Fla. 200; 52 Fla. 110; 58 Fla. 74; 51 Fla. 44; 51 Fla. 82.

The decision in the Simmons case, 32 Fla. 387, 13 So. R. 896, was disapproved in 52 Fla. 18, 24. The form of indictment used in this case was approved in 94 Fla. 32, 45, 113 So. R. 630, 635, and is equivalent to a charge that the defendant unlawfully and with a premeditated design to effect the death of the deceased or of a human being, did kill the deceased by shooting him with a shot gun. This is legally sufficient to afford due process of law as charging murder in the first degree as defined by the statute, in language adequate to inform the accused of the nature and cause of the accusation against him; and it being clear that no harm could have reasonably resulted to the accused from the omission of the words "of the person killed," or of the words "of a human being," the indictment should not be held to be fatally defective on a motion in arrest, particularly in view of Secs. 6063, 6064 and 2812, Rev. Gen. Stats. 1920, Secs. 8368, 8369, 4499, Comp. Gen. Laws 1927; 58 Fla. 74.

TERRELL, C. J., AND ELLIS AND STRUM, J. J., concur.