## EDNA PEELE v. STATE OF FLORIDA

20 So. (2nd) 120                                              June Term, 1944
November 24, 1944                                                   En Banc
Rehearing denied January 12, 1945

*Zach H. Douglas, Hal Y. Maines* and *J. C. Adkins, Jr.,* for appellant.

*J. Tom Watson,* Attorney General, and *John C. Wynn,* Assistant Attorney General, for appellee.

CHAPMAN, J.:

The appellant, Edna Peele, was indicted by a grand jury of Bradford County, Florida, for the first degree murder of Ancil Thompson on August 14, 1943, in Bradford County, Florida. When arraigned in open court she entered·a plea of not guilty and was placed upon trial before a jury, who, after hearing all the testimony of the parties and the charges or instructions of the trial court upon the applicable law of the case, returned a verdict of manslaughter. A motion for a new trial was made and denied, when the appellant was sentenced to serve a period of eighteen months at hard labor in the State prison. From this judgment she has perfected an appeal here and contends that the judgment entered against her in the lower court should be reversed for two reasons.

The first question posed for adjudication is the sufficiency of the evidence to sustain the verdict and judgment as entered in the lower court. The answer to the propounded question requires a careful study and an analysis of all the testimony appearing in the record. It is established that the appellant and husband, Joe Peele, owned and maintained a grocery store and restaurant located on the main street of the town of Lawtey. They had but· one child and had their home on the second floor over the. grocery store. Two young ladies were employed in the restaurant. and lived with the Peeles. A meat market was operated in connection with the grocery store, and the trade therein handled almost exclusively by appellant.

Friction developed between appellant and a Mr. Wiggins at the grocery store during·the day of August 14, 1943, resulting in Wiggins' arrest on the complaint of appellant by the town marshal of Lawtey and the posting by him of a. $10.00 bond. Wiggins appears from the evidence as a disturbing factor to the Peeles from the time of his arrest until

Ancil Thompson was killed in front of the appellant's apartment around 11:00 o'clock P.M. of the same day. Wiggins was present and sustained a minor wound when Thompson was killed. It is in the testimony that the Peeles closed their business earlier than usual on this (Saturday) night and retired to their home so as to avoid clashes or trouble with Wiggins and his friends and relatives. Efforts to obtain protection from the town marshal failed and a telephone call to the Sheriff at Starke for protection was made. An appeal was made to the State Highway Patrol.

There is evidence to the effect that shortly prior to the fatal shooting, rocks, stones and bottles and other debris were thrown (presumably by Wiggins and his friends and relatives) about the home and place of business of the appellant, but a search by the Sheriff on the following day failed to reveal any of these missiles. Likewise that there were several shots fired about the property, and the odor of whiskey "on the mob" was testified to by one or more witnesses. Wiggins wanted to talk with the appellant and reach an understanding with her for the return of his $10.00 previously posted with the town of Lawtey as a bond. He assumed the authority for calling at her home for this purpose between 10:30 and 11:00 o'clock P.M., after business hours. On this mission he was accompanied by several relatives and friends—mostly young men.

When he (Wiggins) was talking with appellant about the return of the $10.00 a tussle arose over the possession of a shot gun then in the possession of a Mr. Bennett, a friend of one of the girl employees. Several of Wiggins' friends or relatives accompanying him to the appellant's home joined in the effort to take the shot gun, and Wiggins turned from the appellant and joined the group. The appellant then fired into the group, which resulted in the death of Ancil Thompson and the wounding of others. Our study of the record induces us to conclude that the boys or young men about the Peele home on this occasion belonged in that community or neighborhood.

The Wiggins group was at or near the Peele home (and place of business then closed) around 11:00 o'clock

without invitation from the Peeles. Missiles had been thrown or hurled against the Peele home. One of the Peele group was armed and his disarmament was undertaken (lawfully or unlawfully) by the Wiggins group and during this period Wiggins joined in the struggle and the shooting ensued. In the case of Wilson v. State, 30 Fla. 234, 11 So. 556, we held that "a person's dwelling house is a castle of defense for himself and his family, and an assault upon it with intent to injure him or any of them may be met in the same way as an assault upon himself or any of them and he may meet the assailant at the threshhold and use of force necessary for his or their own protection against the threatened invasion and harm." See Russell v. State, 61 Fla. 50, 54 So. 360; Pell v. State, 97 Fla. 650, 122 So. 110. This rule has been extended by Wharton's Criminal Law to all lawful "inmates" of an attacked home. See Wharton's Criminal Law, Vol. 1 (12th ed.) 868, par. 635.

A close study of the testimony of the State witnesses identified with the Wiggins group or element discloses that the appellant fired the fatal shot without reasonable excuse or justification, while the members of the Peele group called as witnesses were of the view that the Wiggins group (or "mob") were the aggressors and compelled the appellant to fire the fatal shot in defense of her own life or the lives of her husband or child. It is possible that the truth of this controversy lies somewhere between these extreme positions and the challenged verdict reflects the justice of the cause. Personal and property rights are safeguarded by our State and Federal Constitutions and cannot be disregarded by those who would be willing to take the form of a mob and desecrate them during the midnight hours.

Upon examination of all the evidence appearing in the record, if it appears that the essential elements necessary to constitute the crime clearly appears, even though disputes or conflicts appear therein, an appellate court will not interfere with the conclusions of a jury as expressed by its verdict. The guiding principle here controlling is not what this Court may think the jury ought to have done or what such court may think it would have done had it been sitting as a jury

in the case, but whether as reasonable men the jury could have found from all the evidence adduced the challenged verdict. See Sanchez v. State, 133 Fla. 160, 182 So. 645; Beck v. State, 142 Fla. 524, 195 So. 143.

The second ground relied upon for a reversal of the verdict and judgment of the lower court is that the trial court erred in its instruction to the jury on the law of self defense. The portion of the instruction relied upon and urged here as reversible error is quoted in appellant's brief. Likewise the case of Pinder v. State, 27 Fla. 370, 8 So. (2nd) 837, is cited and relied upon as supporting the contention of counsel. We have given due consideration, not only to the quoted instruction on the law of self defense, but the entire charge upon the subject as reflected by the record. We observe the construction placed upon the Pinder case, *supra,* as made by counsel for appellant.

It is our view that when the instruction on the law of self defense is considered in its entirety the force and impressiveness of counsel's contention disappears. The record reflects a correct statement of the law of self defense and portions apparently overlooked by counsel are important and are viz: "Under the law the same circumstances that would justify or excuse the killing of an assailant where the assault upon one's self will also excuse or justify the slayer if the killing is done in defense of his or her husband, wife, parent, child, master, mistress or servant."

We have previously held that a single instruction is not required to contain all the law relating to the subject treated, and, in determining what challenged instructions are proper or improper, the entire instructions as given must be considered as an entirety and should not be considered in isolated portions. See Baston v. Shelton, 152 Fla. 879, 13 So. (2nd) 453.

The judgment of the lower court is hereby affirmed.

BUFORD, C. J., SEBRING and THOMAS, JJ., concur.

TERRELL, BROWN and ADAMS, JJ., dissent.