389 So.2d 1094 (1980)
STATE of Florida, Appellant,
v.
Elsie Virginia BOBBITT, Appellee.
No. II-467.
District Court of Appeal of Florida, First District.
November 7, 1980.
*1095 Jim Smith, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., for appellant.
Michael J. Minerva, Public Defender, and Thomas S. Keith, Asst. Public Defender, for appellee.
BOOTH, Judge.
This cause is before us on appeal from the order of the trial court granting defendant a new trial following conviction of manslaughter in the death of defendant's husband. The basis of the trial court's award of a new trial was the court's failure to instruct, over objection, that defendant had no duty to retreat from her home before justifiably acting in self-defense, as set forth in Florida Standard Jury Instructions in Criminal Cases 2.11(d):
One unlawfully attacked in his own home or on his own premises has no duty to retreat and may lawfully stand his ground and meet force with force, including deadly force, if necessary to prevent imminent death or great bodily harm to himself or another.
The trial court gave the Standard Jury Instruction on duty to retreat prior to use of deadly force,[1] but denied the requested *1096 charge, supra, on the exception to duty to retreat, sometimes known as the "castle doctrine." The State contends that such an instruction is inapplicable where, as here, the victim is not an intruder. Defendant argues the contrary position and further contends that the trial court should have granted motion for a judgment of acquittal at the close of all the evidence.
Evidence for the State established that Mr. Bobbitt died from a single bullet wound to the chest fired at a distance of greater than 12 to 18 inches; that the weapon was a .22 caliber revolver found in the kitchen in the home; that the deceased's blood alcohol at the time of death was sufficient to cause mental confusion and loss of critical judgment; and that there were liver changes probably due to alcoholism. Further evidence was that the gun was purchased by Mr. Bobbitt and given to defendant some three years previously for protection, as she attended night courses. Defendant had not fired it nor any other gun prior to the events in question.
The State also introduced the testimony of 10-year-old Tracy Bobbitt, daughter of the parties, who, together with her baby brother, were present in the house. Tracy was in the kitchen but could see into the den when Mr. Bobbitt pushed defendant into the door, hurting her face and leg. Tracy testified that, "by turning and twisting," the defendant was able to back into the kitchen and away from the deceased. There, she pulled a gun out of her pocketbook, which she had carried on her shoulder since entering the house, and, as the deceased came toward her, shot him when he was six to seven feet away.
Further evidence established that the deceased habitually became drunk and beat his wife and children. The history of abuse includes one incident where the deceased chased defendant around the house with a hammer. A family friend testified to having seen bruises on Mrs. Bobbitt on several occasions. A neighbor who was present in the yard of the house immediately prior to the shooting, testified that when the deceased came home, he had been drinking and that he threatened Mrs. Bobbitt while they were in the yard in such a manner that the neighbor felt impelled to leave and call the police.[2]
The officer who arrived at the scene after the shooting observed that the defendant was limping and had a swelling on the left temple at about the cheekbone. Subsequent medical examination revealed a fractured left cheekbone, torn nerves in the upper jaw and injuries to her leg causing a limp. Medical testimony was that injuries to the face were of the type caused by a fist or a baseball bat to the cheekbone.
Initially, we must determine whether the jury instruction on self-defense was properly limited to the duty to retreat omitting the instruction as to the "castle doctrine" exception. In this regard, we agree with the trial court's holding that the law did not require Mrs. Bobbitt to retreat from her home prior to acting in self-defense and that the jury should have been so instructed.
The Florida Supreme Court in Hedges v. State, 172 So.2d 824 (Fla. 1965), expressly rejected the State's argument "that the home rule exception to the requirement [of retreat] is not available when, as in that case, the attacker does not enter as a trespasser." In Hedges, the trial court gave a self-defense instruction requiring the accused "to use all reasonable means within his power and consistent with his own safety to avoid the danger and avert the necessity of taking human life," but failed to instruct that there is no duty to retreat in one's own home. In reversing the conviction of manslaughter, the Florida Supreme Court held (172 So.2d at 826):

*1097 The quoted language [of self defense instruction] placed upon the accused the duty to use all reasonable means consistent with her own safety to avoid the danger and avert the necessity of taking human life. To the lay mind this well could be construed to mean the duty to run or to get out of the way. There is no such duty when one is assaulted in his own home, despite the common law duty to "retreat to the wall" when one is attacked elsewhere. Pell v. State, 97 Fla. 650, 122 So. 110. While Pell involved a trespasser, it clearly states the rule to be that when one is violently assaulted in his own house or immediately surrounding premises, he is not obliged to retreat but may stand his ground and use such force as prudence and caution would dictate as necessary to avoid death or great bodily harm. When in his home he has "retreated to the wall." Pell further decides that such an instruction should be an element of the charge of self defense where the evidence supports it. Other courts have held that a man is under no duty to retreat when attacked in his own home. His home is his ultimate sanctuary.
The Supreme Court in Hedges cites State v. Grantham, 224 S.C. 41, 77 S.E.2d 291, 292 (1953), in support of its holding. In the Grantham case, the husband's conviction of murder in the death of his wife was reversed because the trial court erred in failing to instruct on the "privilege of non-retreat" in a case where the accused pleaded self-defense to an attack by the wife in the marital home.[3] We agree and hold, as do the majority of jurisdictions, that the castle doctrine or privilege of non-retreat in the home applies regardless of whether co-occupants or intruders are involved.[4] As stated in Redondo v. State, 380 So.2d 1107, 1111 (Fla. 3d DCA 1980), cert. granted, Case No. 59,032 (Fla. September 8, 1980): "[O]ur normal solicitude for the life of the attacker is somewhat dampened when he chooses such historically protected premises on which to make his murderous assault."
Having determined that there was no duty to retreat from the house and, consequently, that any finding by the jury regarding a failure to retreat is irrelevant, we now consider whether, as a matter of law, the evidence supports the manslaughter conviction in light of appellee's plea of self-defense.
Appellee was justified in the use of deadly force only if she reasonably believed that such force was necessary to prevent imminent death or great bodily harm to herself. The test is whether a reasonably cautious and prudent person situated as she was would have believed, and did believe, that the use of such force was necessary to protect herself. She must have used all reasonable means within her *1098 power and consistent with her own safety to avoid the danger without the necessity of using deadly force. However, if she was unlawfully attacked in her own home, she had no duty to retreat from her home but, rather, could lawfully stand her ground and meet force with force, including deadly force, if necessary to prevent imminent death or great bodily harm to herself. See § 782.02, Fla. Stat. (1977); Hedges, supra; State v. Coles, 91 So.2d 200, 203 (Fla. 1956); Stinson v. State, 245 So.2d 688 (Fla. 1st DCA 1971); Fla.Std.Jury Instr. (Crim.) 2.11(d).
Here, defendant's evidence as to self-defense was sufficient to generate reasonable doubt as to guilt. The Supreme Court, in Lane v. State, 44 Fla. 105, 32 So. 896, 899 (1902), held that a jury instruction requiring the defendant to prove self-defense "to the jury's satisfaction" was erroneous, since evidence raising a reasonable doubt was sufficient, holding: "[The instruction] imposes upon the defendant the duty of satisfying the jury that the defense was necessary. The jury need not be satisfied. If the evidence raises a reasonable doubt, it will be sufficient." The defendant who relies on self-defense has the burden of going forward with the evidence, but the ultimate burden of proving guilt beyond a reasonable doubt never shifts from the State. Thus, the State here was required to prove beyond a reasonable doubt that appellee did not act in self-defense. Bolin v. State, 297 So.2d 317, 319 (Fla. 3d DCA 1974), cert. denied, 304 So.2d 452 (Fla. 1974); Fla.Std.Jury Instr. (Crim.) at page 66.
The law is, as stated by this court in Neveils v. State, 145 So.2d 883, 885 (Fla. 1st DCA 1962), that "[i]n the absence of other evidence legally sufficient to contradict the defendant's explanation, his version cannot be ignored." In Neveils, this court reversed a conviction of manslaughter where defendant's explanation was not contradicted and physical evidence was consistent therewith. In Mayo v. State, 71 So.2d 899, 903 (Fla. 1954), the Florida Supreme Court reversed a second degree murder conviction, finding an "absence of other evidence legally sufficient to contradict" defendant's explanation of self-defense. To like effect are Ferguson v. State, 379 So.2d 163 (Fla. 3d DCA 1980) (defendant's direct testimony of self-defense not contradicted by evidence and conviction reversed), and Diaz v. State, 387 So.2d 978 (Fla. 3d DCA 1980) (conviction of manslaughter reversed where no evidence rebutted defendant's testimony of self-defense).
Appellee's version, supported by the physical evidence, substantially corroborated by 10-year-old Tracy Bobbitt and uncontradicted by any evidence, showed that the deceased attacked appellee without provocation, inflicting serious bodily harm; that, thereafter, appellee attempted to get away by moving from the den into the kitchen; that, because of her leg injury, she had difficulty and was limping; that deceased continued to come toward her with no indication that he intended to discontinue his assault; that she pulled a weapon from her purse in the kitchen and shot him when he was only a few feet away. Thereafter, appellee immediately checked the condition of Mr. Bobbitt, called a rescue unit and attempted neither to flee nor to hide the gun.
In several respects, we find this case similar to McKnight v. State, 341 So.2d 261 (Fla. 3d DCA 1977), cert. denied, 348 So.2d 953 (Fla. 1977), where conviction of aggravated assault on a charge of manslaughter was reversed. There the appellant was beaten up earlier in the day; and, hours later, the deceased indicated he was going to beat appellant again and ran toward her, whereupon she shot him. The court held judgment of acquittal should have been entered based on the uncontroverted evidence of self-defense.
Accordingly, judgment of conviction is reversed and the trial court is directed to discharge appellee from custody.
McCORD and LARRY G. SMITH, JJ., concur.
NOTES
[1] Standard Jury Instruction 2.11(d):

If attacked by another, even though the attack is wrongful, he has the legal duty to retreat if by doing so he can avoid the necessity of using deadly force without increasing his own danger, but a person placed in a position of imminent danger of death or great bodily harm to himself by the wrongful attack of another has no duty to retreat if to do so would increase his own danger of death or great bodily harm.
[2] The neighbor who attempted to place the call to the police unfortunately found the line was busy.
[3] The decision of the Fourth District Court of Appeal in Conner v. State, 361 So.2d 774 (Fla. 4th DCA 1978), cert. denied 368 So.2d 1364 (Fla. 1979), receding from its prior decision in Watkins v. State, 197 So.2d 312 (Fla. 4th DCA 1967), is apparently to the contrary and would exclude the exception to the duty to retreat in cases where both the accused and the assailant are legal occupants of the premises.
[4] State v. Grantham, 224 S.C. 41, 77 S.E.2d 291, 292 (1953); State v. Phillips, 38 Del. 24, 187 A. 721 (1936); People v. Tomlins, 213 N.Y. 240, 107 N.E. 496 (1914); Davis v. State, 48 Ala.App. 58, 261 So.2d 873 (1972), cert. denied, 288 Ala. 741, 261 So.2d 785 (1972); State v. Browning, 28 N.C. App. 376, 221 S.E.2d 375 (1976); People v. Lenkevich, 394 Mich. 117, 229 N.W.2d 298 (1975); Gainer v. State, 40 Md. App. 382, 391 A.2d 856 (1978); State v. Jacoby, 260 N.W.2d 828, 835 (Iowa 1977), following State v. Leeper, 199 Iowa 432, 200 N.W. 732 (1924). See also Haynes v. State, 17 Ga. 465, 483 (1855); State v. McPherson, 114 Minn. 498, 131 N.W. 645 (1911); Thomas v. State, 583 S.W.2d 32 (Ark. 1979).

The states clearly limiting the privilege of non-retreat to intruders and persons other than co-occupants are: State v. Grierson, 96 N.H. 36, 69 A.2d 851 (1950); State v. Pontery, 19 N.J. 457, 117 A.2d 473 (1955); Commonwealth v. Walker, 447 Pa. 146, 288 A.2d 741 (1972). See also State v. Boggs, 129 W. Va. 603, 42 S.E.2d 1, 8 (W. Va. App. 1946); Commonwealth v. Shaffer, 367 Mass. 508, 326 N.E.2d 880 (1975) (stating that there is no right of self-defense until the defendant has availed himself of all proper means to avoid physical combat and there is no recognized exception to this general rule in Massachusetts). See generally, 26 A.L.R.3d 1296 Homicide: Duty to Retreat Where Assailant and Assailed Share the Same Living Quarters.