S. LINSLEY, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error.*

Division A.

Opinion Filed July 7, 1924.

Petition for Rehearing Denied July 25, 1924.

1. In the trial of one upon a charge of murder, the defense of self-defense is available only when there exists reasonable grounds to apprehend a design to commit a felony, or to do some great personal injury to the defendant and there shall be imminent danger of such design being accomplished and the defendant must not have wrongfully occasioned the necessity and must have used all reasonable means in his power consistent with his safety to avoid the danger and to avert the necessity of taking human life. The circumstances must be such as to induce a reasonably cautious and prudent man to believe that the danger was actual and the necessity real in order that the slayer may be justified in acting upon his own belief to that effect.

2. The taking of human life is neither justifiable nor excusable where the fatal shot is fired or the fatal stroke given after danger of death or great bodily harm to the defendant has passed.

3. Assignments of error based upon the exclusion of testimony to be available must be so presented to an appellate court as to make it to appear that the excluded testimony was relevant and material or otherwise proper to be admitted.

4. Upon a writ of error the plaintiff in error has the burden of proving substantial error; a showing of mere technical error may not be sufficient.

5. Where no fundamental rights have been violated and the evidence of guilt is amply sufficient, technical errors in

ruling on the admission of testimony or in giving or refusing charges will not cause a reversal.

6. Assignments of error not argued are abandoned and will not be considered by the appellate court.

7. The affidavit, deposition or statement of a juror will not be received to impeach his own verdict where his deposition or affidavit or statement relates to matters resting in the personal consciousness of the juror.

8. The affidavits of jurors are admissible to explain and uphold their verdict, but not to impeach and overthrow it. Such general rule is subject to the qualification, however, that affidavits of jurors may be received, for the purpose of avoiding a verdict, to show any matter occurring during the trial, or in the jury room, which does not essentially inhere in the verdict itself.

9. Where during the trial of a criminal case and before the jury has received its instructions from the court and during a recess the jury has access to a law book and copies of certain charges it is proper for the trial court, when the verdict is attacked for such reason, to ascertain from the testimony of the jurors whether any misconduct prejudicial to the defendant resulted from such circumstance.

A Writ of Error to the Circuit Court for Madison County, M. F. Horne, Judge.

*Chas. E. Davis*, for Plaintiff in Error;

*Rivers Buford, Attorney General*, and *Marvin C. McIntosh, Assistant Attorney General*, for the State.

ELLIS, J.—In April, 1923, the plaintiff in error, Linsley, was indicted for the murder of William R. Pickles and was convicted of murder in the second degree. A Writ of Error was taken to the judgment. There are thirty-eight assign-

ments of error; one of which rests upon the order overruling a motion for a new trial which itself contains thirty-one grounds.

The case was a very simple one and the material facts few. The plaintiff in error, who about two years and a half before the homicide moved from the State of Georgia near Valdosta and settled in Madison County, near Mosley Hall, became involved in a controversy with Mr. Pickles, an elderly man and long time resident of the community, over a boundary line, or a line fence. The dispute, instead of being settled amicably between the parties, seemed to grow and produce bad feelings between the parties until the community was to some degree affected by it; to the extent, at least, that a movement was begun on the part of the neighbors to try and buy out the defendant and induce him to leave the community.

On the 22nd day of January, 1923, Mr. Pickles left his home on the St. Augustine road, riding a mule; he carried in the left-hand rear pocket of his trousers a small shingling hatchet. It was customary for him to carry the hatchet or an axe when going to work or into the woods or fields. As he approached the residence of the defendant the latter met him in the road. He was armed with a pistol and walking.

Some words were exchanged between the two men and then the defendant drew his pistol, fired at Mr. Pickles three times, inflicting mortal wounds. Mr. Pickles fell from his mule and died almost instantly in the road.

There were several witnesses to the transaction. The defendant, himself, said that he killed the deceased under the circumstances related above, but he said that Mr. Pickles accosted the defendant with the insinuation that the defendant was waylaying him and when the defendant denied it Pickles called him a liar and then ''raised his

hatchet as he was going to strike me." The defendant said: "I thought that he had already thrown the hatchet, but he pulled the mule right on around and got as close to me as that gentleman there (indicating). I had my knife in my right hand as I was whittling, and I changed the knife to my left hand and came pretty near falling down in going backwards, and then I got my pistol and shot three times." According to this statement, the defendant fired to kill his enemy after he thought all danger had passed so far as the hatchet as a weapon in the hands of Mr. Pickles was concerned.

But this story was refuted by the testimony of witnesses to the transaction who arrived upon the scene immediately after the difficulty and who testified that the hatchet was still in the left-hand hip pocket of the deceased. The jury did not believe the defendant's story about acting in self-defense but did find him guilty of a lesser degree of murder than that with which he was charged.

There was much evidence about the character of the neighborhood disturbance which seemed to focus upon the defendant and Mr. Pickles, or, at least, to grow out of their difference and an elaborate theory of self-defense woven out of its many details.

Much evidence was received as to the details of the movement in the community to buy out the defendant and induce him to leave. The defendant's counsel was pleased to refer to it as a mob, of which the deceased was to be a party, and which was going to form and go to defendant's house and if need be do him bodily harm. Concerning all of which defendant had been informed and much evidence was taken as to how he received the information, or whether he received it at all, and what he said about it.

Several assignments of error rest upon rulings affecting much of this really immaterial matter.

The defendant was tried for murder. In his testimony he admitted the killing but interposed the defense of self-defense. His own statement, if not upon its face a refutation of his defense, was completely refuted by ample evidence which the jury evidently believed.

His only possible justification of the killing of William R. Pickles was that the latter, at the time the defendant fired, was trying to kill the defendant with the hatchet or inflict serious harm upon him with it.

But there were two reasons why that defense was not effective. One appeared in the statement of the defendant himself when he said that he thought Pickles had thrown the hatchet and defendant then fired, and the other was in the testimony of witnesses who said that when they ran to the deceased, who was lying in the road, the hatchet was still in his hip pocket.

If Pickles did not draw the hatchet and attack the defendant with it in such manner as to induce a reasonable belief on his part that he was in imminent danger of death or great bodily harm from such attack, or, having thrown the hatchet at defendant was, therefore, no longer in possession of it when defendant fired, then the killing of Pickles was unnecessary, unjustified and unlawful, although a mob had been formed of which Pickles was to have been a member and which was to go to defendant's house and run him away or do him bodily harm.

The law of justifiable homicide by self-defense has many times been set forth in decisions of this Court. There must be reasonable grounds to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished. "Imminent means near at hand, mediate rather than immediate, close rather than touching." The one interposing the defense must not have wrongfully occasioned

the necessity; he must have used all reasonable means in his power, consistent with his own safety, to avoid the danger and to avert the necessity of taking human life; the circumstances must be such as to induce a reasonably cautious and prudent man to believe that the danger was actual and the necessity real in order that the slayer may be justified in acting upon his own belief to that effect. See Lane v. State, 44 Fla. 105, 32 South. Rep. 896; Furlow v. State, 72 Fla. 464, 73 South. Rep. 362; Yates v. State, 26 Fla. 484, 7 South. Rep. 880; Pinder v. State, 27 Fla. 370, 8 South. Rep. 837, 26 Am. St. Rep. 75; Landrum v. State, 79 Fla. 189, 84 South. Rep. 535; Danford v. State, 53 Fla. 4, 43 South. Rep. 593; Owens v. State, 64 Fla. 383, 60 South. Rep. 340; Doke v. State, 71 Fla. 633, 71 South. Rep. 917.

The taking of human life is neither justifiable nor exsusable where one fires the fatal shot or strikes the fatal blow after danger of death or great bodily harm to him from the deceased's attack has passed.

Assignments of error based upon the exclusion of testimony to be available must be so presented to an Appellate Court as to make it appear that the excluded testimony was relevant and material or otherwise proper to be admitted. See Covington v. Clemmons, 61 Fla. 151, 55 South. Rep. 81.

Upon a Writ of Error the plaintiff in error has the burden of proof; a showing of mere technical error may not be sufficient. See Danson v. State, 62 Fla. 29, 56 South. Rep. 677; Wilkins v. State, 75 Fla. 483, 78 South. Rep. 523.

Where no fundamental rights have been violated and the evidence of guilt is amply sufficient, technical errors in ruling on the admission of testimony or in giving or refusing charges will not cause a reversal. See Gee v. State, 61 Fla. 22, 54 South. Rep. 458.

Technical, non-prejudicial errors, both as to admission of evidence and charges to the jury, which may have been committed by the trial court will not operate to work a reversal of a conviction of crime where the evidence is sufficient to support the verdict and no fundamental rights of defendant have been violated. See Kersey v. State, 73 Fla. 832, 74 South. Rep. 983; Smith v. State, 74 Fla. 44, 76 South. Rep. 334; Barker v. State, 76 Fla. 164, 79 South. Rep. 436; Milligan v. State, 75 Fla. 815, 78 South. Rep. 535; McQuagge v. State, 80 Fla. 768, 87 South. Rep. 60.

Assignments of error not argued are abandoned and will not be considered by the Appellate Court. McNish v. State, 47 Fla. 69, 36 South. Rep. 176; Mayo v. State, 64 Fla. 95, 59 South. Rep. 861; Lindsey v. State, 67 Fla. 111, 64 South. Rep. 501.

This Court has said in many civil cases that the practice of assigning a large number of errors is reprehensible. See Hoopes v. Crane, 56 Fla. 395, 47 South. Rep. 992; Mitchell v. Mason, 65 Fla. 208, 61 South. Rep. 579.

There is no reason why in a criminal case the practice should be commended. It is not at all likely that in the trial of a case like the one at bar a judge of the experience and learning of His Honor who tried this case below could have committed thirty-eight or more errors. We have examined all the assignments of error which have been argued and find no merit in any one of them. The last argued, which is the thirty-eighth, rests upon the fact that during the trial of the case the jury before retiring to consider of their verdict had access to a law book and what purported to be charges of the Court. The averment is supported by the affidavit of one of the jurors after the verdict. The alleged fact is the basis of the thirteenth and fourteenth grounds of the motion for a new trial.

It is upon grounds of public policy that the rule is ob-

served, that the affidavit, deposition or statement of a juror will not be received to impeach his own verdict; but this rule relates to matters resting in the personal consciousness of the juror, as said by Mr. Justice BREWER in Perry v. Bailey, 12 Kansas 539. When a juror is heard to impeach his own verdict because of some matter resting in his own consciousness the power is given to him to nullify the expressed conclusions under oath of himself and eleven others. ''The general rule is, that affidavits of jurors are admissable to explain and uphold their verdict, but not to impeach and overthrow it. But this general rule is subject to this qualification, that affidavits of jurors may be received, for the purpose of avoiding a verdict, to show any matter occurring during the trial, or in the jury room, which does not essentially inhere in the verdict itself.'' See Perry v. Bailey, *supra*.

The rule is general with but few exceptions if any that the testimony of jurors will not be received to impeach their verdict. See Bartlett v. Patton, 33 W. Va. 71, 10 S. E. Rep. 21, 5 L. R. A. 523, and note; 27 R. C. L. 896.

The rule announced in the Kansas case seems to us to be a salutary one and. more consistent with reason and sound policy. That rule, as announced by Mr. Justice BREWER, is that all those matters lying outside the personal consciousness of the individual juror, those things which are matters of sight and hearing and therefore accessible to the testimony of others and subject to contradiction, the interests of justice will be promoted and no sound public policy disturbed if the secrecy of the jury box is not permitted to be the safe cover for the perpetration of wrongs upon parties litigant. If the jury has been guilty of no misconduct no harm has been done by permitting their testimony to be received. If the jury has been guilty of misconduct but such misconduct was not of

such a nature as to prejudice the rights of the parties the verdict should stand, but the offending juror should be punished. But if such misconduct has wrought prejudice not only should the juror be punished but the verdict should also be set aside; but matters resting in the personal consciousness of one juror should not be received to overthrow the verdict, because being personal it is not accessible to other testimony.

The learned trial judge followed this rule and at the hearing of the motion for a new trial examined under oath the twelve jurors as to their conduct relating to the "law book" and the document purporting to be charges of the Court and denied the motion for a new trial. From an examination of the testimony of the jurors we are of the opinion that the conclusion of the judge was correct and that no misconduct prejudicial to the defendant resulted from the actions of the jurors in relation to either the law book or the draft of the judge's charge.

In the case of Johnson v. State, 27 Fla. 245, 9 South. Rep. 208, this Court, speaking through Mr. Justice TAYLOR, said that it is erroneous to allow the jury after retiring to consider of their verdict to have access to law books of any description. They must get their instructions as to the law of the case from the Court and not from their own perusal of the books. The judgment was reversed however for other reasons. In the case at bar the jury had not retired to consider of their verdict and did receive their instructions as to the law of the case from the Court. None of them testified that the law book was read.

After an examination of the entire case we are of the opinion that there has been no error in the admission or rejection of evidence nor misdirection of the jury resulting in a miscarriage of justice. See Chapter 6223 Laws of Florida, 1911.

It is ordered that the judgment of the Court be, and the same is, hereby, affirmed.

TAYLOR, C. J., AND WHITFIELD, WEST AND TERRELL, J. J., concur.

BROWNE, J., not participating.