HOLT, Associate Justice.
Appellant, 15 years of age, 127 pounds in weight, killed his father by cutting him in the stomach with a knife. He was indicted for second-degree murder, tried on that charge, convicted of manslaughter and sentenced to 10 years which he is permitted to serve in the Apalachee Correctional Institution of the State of Florida as provided for in the sentence of the Court.
The affray took place at the ice plant in Starke, Bradford County Florida. Appellant’s father and mother and his sister drove there to secure ice before proceeding home between 5 and 6 o’clock in the afternoon. The father, who was driving, requested appellant to get 75 pounds of ice. The car was parked about 11 feet from the loading platform. Appellant replied that he could not “tote” 75 pounds of ice out to the automobile with his weak back which had been injured in a fall from a horse and later further complicated by a swimming accident. Appellant threw the dollar bill which his father had given him to use in the purchase of the ice back on the front seat of the car, to which the father said: “Well, God damn your soul, if you don’t get that ice I am going to kill you. I know you can bring it out here.” Upon this, appellant got out of the car followed by his father who had one hand in his pocket, appellant retreating somewhat while the father began hitting at him. As the father got out of the car, appellant, as he testified, took his knife from his pocket, opened it, and held it by his side, stating that he believed the threat of his father and that he (the father) would kill him. The son stopped, both father and son were observed by the wife and mother making motions toward each other and suddenly the father turned back holding his stomach from' which blood was oozing and side-stepped his way back to the rear seat of the car with the assistance of his wife. The boy drove the car seeking medical assistance, and after having failed to find doctors at the first two offices visited, finally located one, who upon a hasty examination, recommended that the father be rushed to the hospital in Gainesville, Florida, which was done, but he was pronounced dead upon arrival.
Unless the mother could be classified as an eyewitness, since she was viewing the incident from the rear, looking toward the back of the father, there were none to the killing, in spite of the fact that there were many people around, no one heard either the father or the boy speak a word. One witness did hear some one, not identified, say, “I am not afraid of you,” and the same words in reply by some one else, but they could not be traced to either the appellant or his father. Appellant pled self-defense, and poses three questions, the first two of which are not applicable. The third only raises the sufficiency of the evidence, and *210 whether or not it was competent to sustain the verdict of the jury in the conviction of manslaughter.
The decedent father often quarreled and fought in the presence of appellant; that on at least one occasion had beaten appellant’s mother; that he was in the habit of carrying a knife; that he never took appellant to Sunday School; that decedent had a knife at the time of the homicide in his pocket; that the decedent had cursed appellant and his other children; that the decedent was quick tempered, but had never beaten appellant except on one occasion, and on one other time, as appellant testified, he avoided a beating because he fled therefrom. All of these facts were duly considered by the jury.
However unfortunate this event may be, and, viewed in the light of the youthfulness of appellant and from a reading of the cold printed record, however one may be moved to look upon this with a sympathetic eye, yet it is the little things which indicate the true state of affairs in a given situation. In this case we are impressed by two actions of appellant which fit in quite closely with the entire pattern of his conduct on this afternoon. When his father gave him the dollar bill with which to purchase the ice, he threw it back on the front seat and told his father he could not “tote” the ice that far on account of his weak back. Then ensued the threat, after which he left the car preparing to defend himself by drawing his knife before any hostile action was initiated by his father. These two facts, coupled with the other testimony which appears in the record, absolutely destroys any vestige of self-defense. Moreover, appellant could have retreated further and avoided the encounter altogether. There was nothing to stop his passage in that effort, and he was not called upon by any of the exigencies of the situation to stop and protect himself with his weapon, because insofar as the record disclosed, his father’s hand was still in his pocket and was never withdrawn therefrom, except after the fatal blow was struck, and then only in an effort to staunch the flow of his blood, which was burbling from the wound and between his tightly pressed fingers. Linsley v. State, 88 Fla. 135, 101 So. 273; Ammons v. State, 88 Fla. 444, 102 So. 642.
Affirmed.
THOMAS, Acting Chief Justice, and TERRELL, SEBRIN'G, HOBSON, and MATHEWS, JJ., concur. '
DREW, J., dissents.