183 So.2d 34 (1966)
STATE of Florida ex rel. Thomas Michael D'ANDREA, Petitioner,
v.
Harold S. SMITH, As Judge of the Twelfth Judicial Circuit of Collier County, Florida, Respondent.
No. 6845.
District Court of Appeal of Florida. Second District.
February 9, 1966.
Ernest W. Yocom, Miami, for petitioner Thomas M. D'Andrea.
Earl Faircloth, Atty. Gen., Tallahassee, Robert R. Crittenden, Asst. Atty. Gen., Lakeland, for respondent.
Frank Schaub, State Atty., Bradenton, amicus curiae.
ALLEN, Chief Judge.
Petitioner filed suggestion for writ of prohibition to the Circuit Court of Collier County. Petitioner, Thomas Michael D'Andrea was tried in the court below. A verdict was returned finding him not guilty. The jury was discharged from the cause.
Subsequent to the discharge of the defendant-petitioner, July 21, 1965, the court recalled the jurors on his own motion for a hearing before him. Affidavits of the *35 jurors were taken July 22, 1965. The State's Attorney, on or about the 26th of July, 1965, filed a motion to vacate judgment and reject and expunge the verdict. On September 21, 1965, a hearing was held on the State's motion and, over the objections of the attorney for the petitioner, testimony and affidavits of the jurors were introduced as to their conduct in the jury room. On October 13, 1965, an order was entered granting the State's motion for a mistrial, striking and expunging from the record the jury's not guilty verdict and directing the State's Attorney to proceed upon the same information for the further prosecution of Thomas Michael D'Andrea.
The defendant, petitioner here, filed his motion for a dismissal, upon reinstatement of the information, on the ground that he had previously been placed in jeopardy on the same charge. The court denied the motion and ordered the State's Attorney to proceed with the prosecution.
We conclude that the court below was in error in setting aside the jury verdict in favor of the defendant; and that a trial of the defendant for the same offense again would constitute double jeopardy. Therefore, we shall make the rule nisi absolute.
We glean from the record and affidavits before us that the petitioner was charged by information with injuring telephone lines. The case proceeded to trial on July 21, 1965. When the jury returned to the courtroom, after the trial, the court inquired whether they had reached a verdict. The foreman, Melt Williams, said: "We find him guilty." The clerk of the court was handed a written verdict which read:
"We, the jury, find the defendant Not Guilty. So say we all. July 21, 1965.
 /s/ Melt Williams 
 Foreman."
The judgment of not guilty and the discharge were formally announced and entered in the records of the court.
The jury was not polled at this time but subsequent to the discharge of the jury the foreman told the judge that he felt the defendant was guilty but the others did not agree and they told him that if he would sign the paper they would agree to defendant's guilt. Williams testified that he could neither read nor write and that somebody switched verdicts.
Juror Adkins testified that he felt the defendant was not guilty and thought everyone else had agreed on it. He said he knew nothing about switching papers.
Juror Tom Jones stated that the jury had all agreed the defendant was guilty but did not know about switching papers.
Jurors Angus Lawson, Jr., and James Edward Crosby stated that they thought everyone had decided defendant was not guilty and denied any knowledge of switching verdicts.
Juror Alonzo Howard made affidavit: "* * * We retired to the jury room and after some time it was my opinion the man was not guilty. * * * When we come out of the jury room I thought we had found D'Andrea guilty. I was suprised to hear the Clerk read that he was not guilty."
Testimony was taken on the State's motion to vacate judgment and reject and expunge the verdict. Several affidavits were filed and testimony given that the parties had heard Williams say, "We find him guilty," when the jury returned to the court room and, apparently, from the jurors' testimony, there was never a unanimous verdict reached in the case.
If the jury had been properly polled and the trial judge found that there was a dispute or disagreement as to the verdict returned, he could have sent the jury back to bring in a proper verdict. A jury should be polled before it is discharged, because upon discharge, its members lose their separate identity as a jury, and can be affected by extra-trial influences.
The Supreme Court of Georgia, in Robinson v. State, 109 Ga. 506, 34 S.E. 1017, *36 1018, (1900), stated, with reference to the time when a jury should be polled, as follows:
"The foregoing disposes of the main contention of the plaintiff in error, and our rulings upon the other questions involved in the case are briefly stated in the headnotes. We do not think further comment necessary, except to make a brief reference to the point decided in the last note. The well-settled rule that a request to poll a jury should be made before the members of it disperse and mingle with the bystanders is, of course, based upon the idea that it would be dangerous to allow a juror who might have heard something calculated to change his mind to have an opportunity to recede from a verdict to which he had really agreed. Certainly nothing would be more likely to have such an effect than a sentence of which a juror did not approve. In this case the punishment inflicted was, we are informed, a term of 15 years in the penitentiary, and it would not have done to allow the jury to be polled after they knew what the judgment of the court was. We think it was a proper one, but no man can tell how the jurors may have regarded it, or that, after it was announced, some of them might not have desired to annul a verdict to which they had deliberately assented."
32 Fla.Jur., Trial, § 251, states:
"An accepted means of ascertaining whether the jury are unanimous in their decision is by having each juror answer the question, `Is this your verdict?' in the presence of the court and counsel. This provides a manner of ensuring that no juror has been coerced or induced to agree to a verdict to which he does not fully assent. The procedure is available, on the request of a party, in a civil trial. It is also available in criminal cases. On the motion of either the state or the defendant, or on its own motion, the court may cause the jurors to be asked severally if the verdict rendered is their verdict. If a juror dissents, the court must direct them to be sent back for further consideration. If there is no dissent the verdict must be entered of record and the jurors discharged. No jury, however, may be polled after a verdict has been directed by the court, and no motion to poll the jury can be entertained after the jury is discharged or the verdict recorded."
Neither the testimony of the jurors nor the affidavits should have been received in evidence below. The purpose of this testimony was to impeach the verdict, which the jury had rendered before their discharge.
The State argues that the testimony and affidavits of the jurors can be utilized to show that the requisite unanimity was missing from the verdict. There is authority for this view. See Routhier v. City of Detroit, 338 Mich. 449, 61 N.W.2d 593, 40 A.L.R.2d 1114, also Annot. 40 A.L.R.2d 1119.
In State v. Ramirez, Fla. 1954, 73 So.2d 218, our Supreme Court held that it was error to grant a new trial solely upon the basis of a juror's affidavit that he had failed to register his objection to the verdict of guilty because of the erroneous belief that the majority vote of the jurors was sufficient. The trial judge entered an order, which stated that the jury found the defendant, Ramirez, guilty of rape and recommended mercy. The jury was not polled. On the next morning one of the jurors came to the judge and told him: that he was disturbed about the verdict; that he was firmly convinced the defendant was innocent and that at no time during the deliberations had he ever been convinced of his guilt; that at the time the verdict was announced he was still convinced of the innocence of the defendant; and that he agreed to the verdict and remained silent when it was read in open *37 court by the clerk because of his impression that a vote of a majority was sufficient to convict.
The Court, in Ramirez, supra, said:
"As to the ground upon which the new trial was ordered, it is settled that a juror, after solemnly entering his verdict in court, is not to be believed or heard when, after the discharge of the jury of which he was a member, he swears that he never approved or consented to the verdict; and that after the return of a verdict in open court the testimony of jurors as to motives and influences by which their deliberations were governed should not be received.
"As the matter is stated in Turner v. State, 99 Fla. 246, 126 So. 158, 159:
"`"The general rule is that affidavits of jurors are admissible to explain and uphold their verdict, but not to impeach and overthrow it. But this general rule is subject to this qualification, that affidavits of jurors may be received, for the purpose of avoiding a verdict, to show any matter occurring during the trial or in the jury room which does not essentially inhere in the verdict itself." In fact "the rule is general, with but few exceptions, if any, that the testimony of jurors will not be received to impeach their verdict." Linsley v. State, 88 Fla. 135, 101 So. 273, 275; 27 R.C.L. 896; Bartlett v. Patton, 33 W. Va. 71, 10 S.E. 21, 5 L.R.A. 523.
"`The matters stated in the affidavit show that it inheres essentially in the verdict itself.
"`The general rule appears to have always been that affidavits of jurors would not be received to show that a juror or jurors misunderstood the court's charge. If they differ about the instructions of the court, they should come into court and have them repeated; and if they fail to do this, they ought not to be permitted to show afterwards what their impressions or views of the instructions were. 27 R.C.L. 897, § 69.'"
The brief of Amicus Curiae cites the case of Russ v. State, Fla. 1957, 95 So.2d 594, in support of setting aside this verdict. In the Russ case, the defendant was convicted of first degree murder without recommendation of mercy. The writer of this opinion was the trial judge in that case and rendered a judgment on the jurors' verdict, imposing the death sentence. This was affirmed by the Supreme Court in Russ v. State, Fla. 1957, 92 So.2d 811. Subsequently, the defendant presented a petition thereto for permission to apply to the trial court for a writ of error coram nobis. The Supreme Court held that allegations of the petition, supported by affidavit of petitioner's attorney, that a juror stated to the jury that he could never accept the verdict of conviction with recommendation of mercy because he had personal knowledge that the defendant had severely beaten and threatened to kill the victim on numerous occasions and described beatings and threats in great detail, were sufficient to invalidate the verdict, judgment and sentence. The Supreme Court granted the petition and remanded the case to the trial court, saying:
"It is a long established and generally accepted doctrine that testimony or affidavits of jurors impeaching a verdict rendered by them will not be received and considered where the facts shown therein are such as inhere in the verdict. Langford v. King Lumber & Mfg. Co., 1936, 123 Fla. 855, 167 So. 817; City of Miami v. Bopp, 1934, 117 Fla. 532, 158 So. 89, 97 A.L.R. 1035; Linsley v. State, 1924, 88 Fla. 135, 101 So. 273.
"In the recent case of Marks v. State Road Dept., Fla. 1954, 69 So.2d 771, this Court held that affidavits of jurors may be received for the purpose of avoiding a verdict by showing any matters *38 occurring during the trial or in the jury room which matters do not essentially inhere in the verdict itself. This Court on page 774, quoted what it considered to be the true rule, as expressed in Wright v. Illinois & Miss. Telegraph Co., 1866, 20 Iowa 195:
"`"That affidavits of jurors may be received for purpose of avoiding a verdict, to show any matter occurring during the trial or in the jury room, which does not essentially inhere in the verdict itself, as that a juror was improperly approached by a party, his agent, or attorney; that witnesses or others conversed as to the facts or merits of the cause, out of court and in the presence of jurors; that the verdict was determined by aggregation and average or by lot, game or chance or other artifice or improper manner; but that such affidavit to avoid the verdict may not be received to show any matter which does essentially inhere in the verdict itself, as that the juror did not assent to the verdict; that he misunderstood the instructions of the court; the statements of the witnesses or the pleadings in the case; that he was unduly influenced by the statements or otherwise of his fellow-jurors, or mistaken in his calculations or judgment, or other matter resting alone in the juror's breast."'" (95 So.2d 594, 600)
After the case was returned to the trial court to prove the allegations of the affidavit made in the case, no proof was made and the trial judge dismissed the proceedings.
In the instant case, the statements in the affidavits of the jurors and their testimony, taken after their discharge in front of the trial judge, inhered in the verdict and, therefore, were improperly received to impeach the verdict.
As we have stated before, the lower court overruled the plea of former jeopardy made by the defendant. In State ex rel. Williams v. Grayson, Fla. 1956, 90 So.2d 710, 63 A.L.R.2d 777, the Florida Supreme Court, in an opinion by Mr. Justice Thornal (now Chief Justice of the Supreme Court), held that where a motion for mistrial had been granted in a prior prosecution without the accused's express consent and for reason which was not legally sufficient in the absence of such consent, subsequent trial for the same offense would constitute double jeopardy. The Court, in its opinion, p. 713, said:
"The protection of an accused against being twice put in jeopardy for the same offense is a right guaranteed by Section 12, Declaration of Rights, Florida Constitution, F.S.A. The constitutional provision is merely a recognition of a common law principle which is an inherent part of our system of justice in the enforcement of the criminal law. While to some the position of the petitioners in this matter may appear to be highly technical, it is nonetheless legally sound under our own precedents. In so holding we believe our position to be consistent with the overwhelming weight of authority on the subject. A person is placed in jeopardy when he is put upon trial under an indictment or information sufficient in form and substance to sustain a conviction before a court of competent jurisdiction and a jury has been impaneled and sworn and charged with his deliverance. Allen v. State, 52 Fla. 1, 41 So. 593. When this point in the trial has been reached, the trial judge should exercise the power to discharge the jury only in cases of manifestly urgent and absolute necessity. If the jury is discharged for legally insufficient reasons and without an absolute necessity and without the defendant's consent, such discharge is equivalent to an acquittal and precludes a subsequent trial for the same offense. Illustrative of the urgent or necessary reasons that would justify the discharge *39 of the jury at the stage of the trial mentioned would be: (a) the illness of the judge, the accused, or a juror requiring the absence of any of them from the court, or (b) the inability of the jury to agree on a verdict after due and proper deliberation, or (c) a consent of the accused himself."
In the instant case the jury returned a verdict of not guilty, the jury was not polled, and was discharged by the court. The discharge, for none of the legally sufficient reasons quoted above, amounted to an acquittal. All the affidavits of the jurors and their testimony inhere in the verdict itself and, therefore, were improperly received.
For the reasons stated above, the rule nisi is therefore made absolute.
LILES and PIERCE, JJ., concur.