CHARLES CARROLL, Associate Judge.
The appellee James Wade was charged by information with the crime of murder in the second degree (§ 782.04(2) Fla.Stat., F.S.A.). On motion of the accused prior to trial the court dismissed the cause, and the state appealed.
From his automobile the accused had fired several shots in the direction of a group of persons assembled outside a nightclub, with the unfortunate result that a person was struck and killed.
The accused filed a discovery motion, alleging the shooting of the victim by him had been done in self-defense; that in the incident his car had been damaged by bullets, and had been impounded by the police. The motion prayed for an order for return of the car to him, and in the alternative for an order requiring the state to *852 produce the car for inspection. An order to produce was entered. When the state was unable to comply, because the car after having been impounded by the city had been sold, and its whereabouts were unknown, the accused filed a motion for dismissal. After a hearing where oral and deposition testimony was presented the trial court dismissed the cause. We find error, and reverse.
Rule 3.220(a) RCrP provides that after the filing of an indictment or information, within a specified time following demand by a defendant, the state shall disclose to defendant’s counsel and present for inspection, etc., information and materials thereunder listed, which are “within the State’s possession or control”, including “Any tangible papers or objects which were obtained from or belonged to the accused”. As sanctions for non-compliance with an order to produce, the rule (by sub-section (j) (1)) authorizes the court to “grant a continuance, grant a mistrial, prohibit the party from calling a witness not disclosed or introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances”.
Here, for non-compliance by the state with the order to produce the car for inspection, the court applied an extreme sanction of dismissal, on grounds which made the dismissal of the cause tantamount to discharge of the accused from the crime charged.
As shown by the order of dismissal, in the testimony presented there was a conflict as to whether the only shots fired were those discharged by the accused and it could not be determined from a photograph of the missing car whether it had been damaged by gunfire, from which the court concluded that if the car was produced and showed fresh bullet holes that would refute the testimony of the state’s witnesses that shots were not directed at the defendant and would corroborate the defendant’s contention of self-defense. Therefrom the trial court further concluded that failure of the state to produce the car would result in denying the defendant a right to present evidence favorable to his defense and the right to a fair trial.
The facts as to the incident or affray upon which the court based those conclusions were stated in the dismissal order as follows: “James Wade the defendant was riding in his automobile on November 3, 1971, in the vicinity of Northwest 2nd Avenue and 36th Street where The Souls Place Lounge is located. A gunfight ensued between him and several men standing in a parking lot across from The Souls Place Lounge, and Wade’s car received damage from gunfire.”
That statement by the court relating to the occurrence was incomplete. Not included therein were other facts, disclosed in the deposition testimony of several witnesses, which showed production of the car would not be material to the defense or essential for a fair trial. These were that following the initial shooting affray in which it appears the accused fired some shots from his car, and there may have been shots fired by others at him which struck his car, the accused retreated from his position of danger by leaving the scene in his car which was driven by a woman, and that later, after a period variously described as some minutes or five to ten minutes, the accused returned to the scene (in his car being driven by his companion), and from a rear seat window of the moving car, with a gun held in each hand, fired shots from both guns in the direction of the persons assembled there, striking the victim.
The state argues, and we agree, that if it could be established, by production of the car showing bullet holes, or otherwise, that shots were fired at the accused in the initial shooting affray, or even in response when he later drove up and fired at the group, such evidence would be wholly immaterial and of no avail to the accused in a claim that his shooting and killing of the victim, after leaving the scene and upon *853 returning, was a justifiable homicide. This is so because if, as indicated, the evidence at trial should disclose that the accused removed himself from a position of danger or peril, and then voluntarily drove back and opened fire on the group his action then was that of an aggressor, and the resultant killing would not be a justifiable homicide under § 782.02(2) (b) Fla.Stat.F. S.A.
In 16 Fla.Jur., Homicide, § 57, it is said, “The right to take life in self-defense exists only in extreme cases where there is no other apparent practicable way to avoid the threatened danger * * * thus, the taking of human life is neither justifiable nor excusable where a fatal blow or shot is administered after the danger of attack has passed * *
In Linsley v. State, 88 Fla. 135, 101 So. 273, the Supreme Court said: “The taking of human life is neither justifiable or excusable where one fires the fatal shot or strikes the fatal blow after danger of death or great bodily harm to him from the deceased’s attack has passed.”
That principle was followed and applied in State v. Coles, Fla.1956, 91 So.2d 200, and McKinney v. State, Fla.App.1972, 260 So.2d 239.
Assuming therefore, although the evidence did not so establish, that the accused was not the aggressor in the initial shooting in which shots may have been exchanged between him and the persons who were gathered outside the nightclub, he had the means to and did retreat from the danger by driving away from the scene, as was his duty under the law in that situation. Danford v. State, 53 Fla. 4, 43 So. 593; Owens v. State, 64 Fla. 383, 60 So. 340; Scholl v. State, 94 Fla. 1138, 115 So. 43.
On the evidence which was before the court the condition of the car was not material, and it was error to dismiss the cause as a sanction for failure of the state to comply with an order for its production for inspection.[1]
The order of dismissal is reversed, and the cause is remanded to the trial court for further proceedings.
It is so ordered.

. Compare Johnson v. State, Fla.App.1971, 249 So.2d 470, in which this court reversed a homicide conviction and ordered a new trial where despite inability of the state to produce a bullet which killed the victim, the trial court, over objection of the defendant had allowed the state to present the testimony of a ballistics expert (who had examined the bullet earlier when the state had possession of it) to establish that the bullet was fired from the defendant’s gun.