380 So.2d 1107 (1980)
Ricardo REDONDO, Appellant,
v.
The STATE of Florida, Appellee.
No. 79-116.
District Court of Appeal of Florida, Third District.
March 4, 1980.
*1108 Henry R. Carr, Miami, and Peter Kutner, for appellant.
Jim Smith, Atty. Gen., and James H. Greason, Asst. Atty. Gen., for appellee.
Before PEARSON, HUBBART and SCHWARTZ, JJ.
HUBBART, Judge.
The central issue presented for review is whether Fla.Std. Jury Instr. (Crim.) 2.11(d) (para. 10) on self defense [concerning the defendant's lack of a duty to retreat when "unlawfully attacked in his own home or on his own premises"] applies in an aggravated battery and possessory firearm case when the defendant presents evidence at trial tending to show that he was assaulted with a deadly weapon while lawfully engaged in his occupation at a place of business owned by his employer. We hold that the above instruction lies in such a case and the failure to give same in this cause constitutes reversible error requiring a new trial as to both the battery and firearm convictions.

I
The facts pertinent to the above issue are as follows. The defendant Ricardo Redondo who was charged in a two-count information with aggravated battery [§ 784.045, Fla. Stat. (1979)] and unlawful possession of a firearm while engaged in the commission of a felony [§ 790.07(2), Fla. Stat. (1979)], in the Circuit Court for the Eleventh Judicial Circuit of Florida. Upon the defendant's plea of not guilty, the case was tried in the trial court before a jury. The evidence adduced at trial tended to show that on July 3, 1978, at approximately 11:00 p.m. the defendant was at work employed as a clerk in a U-Totem store in Miami, Florida. The defendant and his wife, who was also a U-Totem employee at the time, were stationed behind the counter of the store next to the cash register. The complainant Jeffery Jessup and his companion George DiNisco entered the store at that time to purchase some beer. After removing a six-pack of beer from the cooler, Jessup and DiNisco went to the check-out counter to pay for the intended purchase. The versions of the episode conflict at this point.
The defendant testified that Jessup became angry upon learning the price of the beer and began using some profane language in front of the defendant's wife who had rung up the purchase. When asked to refrain from the use of such language, the defendant testified that Jessup picked up a bottle of beer from the six-pack on the counter, lifted it above his head and attempted to hit the defendant with it. Upon observing these actions, the defendant pulled out a gun from a bag under the cash register and shot Jessup in the chest.
*1109 Mr. Jessup testified at trial that while he was at the counter with his six-pack of beer, the defendant became very upset for some reason, that the defendant began waving a brown paper bag at Jessup trying to hit Jessup in the face, that the defendant put his hand in the bag which he was waving, that Jessup believed the defendant had a weapon in the bag and grabbed a bottle out of the six-pack on the counter to defend himself. At this point, Jessup testified that the defendant shot Jessup in the chest. Jessup admitted engaging in profanity at the counter but testified that he never had an opportunity to raise the bottle at the defendant. After the defendant had fired the gun, the defendant allegedly stated to Jessup, "I'm going to kill you." Thereafter, Jessup stated that he ran out of the store.
Mr. DiNisco, complainant's companion, testified that Jessup became angry at the counter when he realized what the price of the beer was, that DiNisco did not understand what Jessup said to the defendant and his wife, that thereafter he heard the defendant tell Jessup, "How dare you curse in front of a lady," indicating the defendant's wife at the cash register, that the defendant became more upset and attempted to hit Jessup in the head with a paper bag, screaming, "God damn you. I'll kill you," that thereafter the defendant attempted to strike Jessup with a paper bag four or five times, that the defendant thereafter opened the paper bag, pulled out a gun and shot Jessup in the chest. DiNisco testified that Jessup had armed himself with a bottle taken out of a six-pack on the counter prior to the defendant taking the gun out of the paper bag, but that Jessup had never raised the bottle above his waist level. DiNisco testified that thereafter Jessup ran out of the store with the defendant in pursuit screaming.
Based on the above testimony, the defendant requested the trial court to charge the jury in accord with Fla.Std. Jury Instr. (Crim.) 2.11(d) (para. 10) on self defense concerning the defendant's lack of a duty to retreat when unlawfully attacked in his own home or on his own premises. That standard jury instruction reads as follows:
"One unlawfully attacked in his own home or on his own premises has no duty to retreat and may lawfully stand his ground and meet force with force, including deadly force, if necessary to prevent imminent death or great bodily harm to himself or another."
The state objected to the above instruction on the ground that the instruction was only applicable to a home and not to business premises. The trial court sustained this objection and declined to give the instruction to the jury.
The court did charge the jury in accord with Fla.Std. Jury Instr. (Crim.) 2.11(d) (para. 9) as follows:
"If attacked by another, even though the attack is wrongful, he has the legal duty to retreat if by doing so he can avoid the necessity of using deadly force without increasing his own danger, but a person placed in a position of imminent danger, of death or great bodily harm to himself by the wrongful attack of another has no duty to retreat if to do so would increase his own danger of death or great bodily harm."
The trial court also instructed the jury on other appropriate self defense instructions, none of which pertained to the duty to retreat.
The jury acquitted the defendant on the aggravated battery charge, but returned a verdict of guilty on the lesser included offense of simple battery [§ 784.03, Fla. Stat. (1979)]. The jury also returned a verdict of guilty on the charge of possession of a firearm during the commission of a felony. The trial court entered a judgment upon both convictions, but subsequently, upon proper motion and hearing, arrested the judgment of conviction as to possession of a firearm during the commission of a felony. The trial court concluded that because the jury had acquitted the defendant of the underlying felony, to wit: aggravated battery, the conviction on the said firearm charge was inconsistent with such acquittal.
The defendant appeals the conviction of simple battery. The state cross-appeals the *1110 arrest of judgment on the firearm conviction.

II
It is the established law of this state that a person may use deadly force [i.e., "force which is likely to cause death or great bodily harm," § 776.06, Fla. Stat. (1979)] to repel an unlawful attack upon himself if "he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself... ." § 776.012 Fla. Stat. (1979). Moreover, Florida, in accord with a strong minority of jurisdictions throughout the country, has imposed an additional requirement that the defender against such a violent attack has a duty to avoid the difficulty and retreat from the affray, before using deadly force, if he can do so consistent with his own safety without exposing himself to death or great bodily harm.[1] The policy reason behind this retreat rule is to insure more fully that human life will not be taken by a person who is unlawfully attacked except as a last resort to save himself from imminent death or great bodily harm. Pell v. State, 97 Fla. 650, 665, 122 So. 110, 116 (1929); Linsley v. State, 88 Fla. 135, 101 So. 273, 275 (1924) (court syllabus no. 1); Doke v. State, 71 Fla. 633, 71 So. 917, 918 (1916) (court syllabus no. 1); Owens v. State, 64 Fla. 383, 60 So. 340 (1912) (court syllabus no. 2); King v. State, 54 Fla. 47, 44 So. 941, 942 (1907) (court syllabus no. 1); Danford v. State, 53 Fla. 4, 43 So. 593 (1907) (court syllabus no. 1); W. LaFave & A. Scott, Jr., Criminal Law 395-396 (1972); Perkins on Criminal Law, 1005-1012 (2d ed. 1969).
An exception to the general duty to retreat before using deadly force in self defense has long been recognized in this state. The Florida Supreme Court in Danford v. State, 53 Fla. 4, 13, 19, 43 So. 593, 596-597, 598 (1907), states that exception as follows:
[A] man violently assaulted in his own house, or on his premises near his house, is not obliged to retreat, but may stand his ground and use such force as may appear to him as a cautious and prudent man to be necessary to save his life or to save himself from great bodily harm. (citation omitted)... .
The doctrine that a man assaulted on his own premises is under no duty to retreat, but may stand his ground and resist the assault with whatever force may be necessary, even to the taking of life, has its origin in the common-law theory that a man's house was his castle. (citation omitted). This doctrine has been by some courts extended to the premises immediately adjoining the dwelling house, and other buildings, such as an office or place of business.
Indeed, the prevailing rule throughout the country among those jurisdictions which, like Florida, have adopted a general duty to retreat doctrine is that a defendant is under no duty to retreat prior to using deadly force in self defense when violently attacked in his home or business premises, which includes inter alia his place of employment while lawfully engaged in his occupation. Annot., 41 A.L.R.3d 584, 589-602 (1972); Perkins on Criminal Law 1009-1012 (2d ed. 1969). We adopt this prevailing rule as the law in this state. In our view, business or employment premises should enjoy the same sanctity as a home for self defense purposes as in each instance the person attacked has a proprietary or near proprietary interest in the place where he is assaulted which is cloaked with a certain privacy *1111 protection; a person ought not be required, when attacked, to flee from such hallowed ground. Moreover, our normal solicitude for the life of the attacker is somewhat dampened when he chooses such historically protected premises on which to make his murderous assault.
In the instant case, the defendant testified that he was lawfully engaged in his occupation as a clerk at a U-Totem store when he was unlawfully assaulted by a customer with a deadly weapon to wit: a bottle, Blitch v. State, 194 So.2d 1 (Fla. 3d DCA 1967); Dey v. State, 182 So.2d 266 (Fla. 2d DCA 1966), that this attack was preceded by the customer's obscene criticism of the store's price of a product, and that the defendant used deadly force, to wit: a gun, in order to protect himself against what he reasonably believed to be a threat of death or serious bodily harm. Based on this evidence, the trial court was required to give an instruction on self defense and in fact did so. Taylor v. State, 301 So.2d 123 (Fla. 4th DCA 1974).
As part of the general instructions on self defense, the trial court was also required to give an instruction as delineated in Fla.Std. Jury Instr. (Crim.) 2.11(d) (para. 10) concerning the defendant's lack of a duty to retreat when unlawfully attacked on his own premises. Such an instruction was proper because the defendant was allegedly at his place of employment lawfully engaged in his occupation when he was unlawfully assaulted by a customer with a deadly weapon. "The right to stand one's ground without retreating when violently assaulted in his own home or on his own premises, in a difficulty which he did not provoke, should form an element of the instructions on the law of self-defense in cases where there is evidence tending to show such a state of facts." Pell v. State, 97 Fla. 650, 665, 122 So. 110, 116 (1929). The failure to give such an instruction constitutes, in our view, reversible error in this cause which requires the grant of a new trial upon remand. Hedges v. State, 172 So.2d 824 (Fla. 1965); Watkins v. State, 197 So.2d 312 (Fla. 4th DCA 1967).

III
As to the state's cross-appeal, we have no difficulty in reversing the arrest of judgment on the firearm conviction. Although this conviction is technically inconsistent with the battery conviction, such inconsistency can form no basis for upsetting either conviction herein as the jury under our system of law is entitled to return inconsistent verdicts in a criminal case. Frazier v. State, 294 So.2d 691 (Fla. 1st DCA 1974). For the reasons already developed, however, it is our view that the trial court improperly declined to instruct the jury, as requested, on the law of self defense with reference to the duty to retreat. As self defense was asserted by the defendant on both the battery and firearm charges, this instructional error deprived the defendant of a fair trial on both charges, and accordingly, a new trial as to both convictions thereunder is in order.

IV
The conviction for simple battery is reversed and the cause remanded for a new trial on the charge of simple battery.[2] The arrest of judgment as to the possession of a firearm during the commission of a felony conviction is reversed and the cause is remanded for a new trial on such charge.
Reversed and remanded.
SCHWARTZ, Judge (specially concurring).
I entirely agree with Judge Hubbart's excellent opinion. It may be in order, however, briefly to highlight why a retrial, rather than reinstatement of the guilty verdict, is required on the charge of possession of a firearm in the commission of a felony. The reason is simply that the denial of the *1112 retreat instruction prejudicially affected the jury's finding that the defendant had committed the felony of aggravated battery (or indeed any crime) at the time of the incident. Of course the fact that the jury "pardoned" Redondo by convicting him only of the lesser-included misdemeanor of simple battery[1] does not preclude its finding, in passing upon the other alleged offense, that he had actually committed the underlying felony. Frazier v. State, 294 So.2d 691 (Fla. 1st DCA 1974). Such a determination may not be upheld, however, when, as here, it is based upon erroneous instructions.
NOTES
[1] There is, on the other hand, no such duty to retreat when the defender uses non-deadly force to defend himself against an unlawful assault. "It seems everywhere agreed that one who can safely retreat need not do so before using non-deadly force." W. LaFave & A. Scott, Jr., Criminal Law 395 (1972). "If he does not resort to a deadly force, one who is assailed may hold his ground whether the attack upon him be of a deadly or some lesser character. Although it might be argued that a safe retreat should be taken if thereby the use of any force could be avoided, yet ... the logic of this position never has been accepted when moderate force is used in self-defense." State v. Abbott, 36 N.J. 63, 174 A.2d 881, 885 (1961). Indeed all the duty to retreat cases in Florida have involved homicides in which deadly force was employed by the person asserting self defense. 16 Fla.Jur. "Homicide" § 60 (1957).
[2] A retrial of the charge of aggravated battery would, of course, be barred on double jeopardy grounds as the jury upon the first trial necessarily acquitted the defendant on such a charge by returning a verdict of guilty on the lesser offense of battery. Greene v. City of Gulfport, 103 So.2d 115 (Fla. 1958); Sands v. State, 328 So.2d 563 (Fla. 3d DCA 1976).
[1] It is obvious that this is what the jury did. If Redondo, as it concluded, committed a battery, it must have been an aggravated battery as defined by § 784.045(1)(b), F.S., since a "deadly weapon," a firearm, was used. And it is easy to see the reason this happened. As the jury was told, a conviction for aggravated battery with a firearm carries with it a minimum mandatory three-year sentence under § 775.087(2). While the possession offense, proscribed by § 790.07(2), is a second degree felony, it involves no such requirement. Clearly, the jury did not believe the circumstances called for Redondo to serve no less than three years in the state penitentiary without parole. I have previously commented, in Silvestri v. State, 332 So.2d 351 (Fla. 4th DCA 1976) affirmed, 340 So.2d 928 (Fla. 1976); and Lee v. State, 368 So.2d 395 (Fla. 3d DCA 1979) (Schwartz, J., specially concurring), upon the illogicality of the Florida doctrine which requires instructions on lesser included offenses for which there are no factual bases. In this case, this rule has led to the jury's overruling of a legislative decision because of its feeling that the result clearly required by the statute was too harsh to be applied to the facts before it. Only the supreme court can determine whether the "jury pardon" policy which permits such a conclusion should remain in effect. See also Judge Letts' thoughtful remarks in Keenan v. State, 379 So.2d 147 (Fla. 4th DCA 1980); cf. Holloway v. State, 379 So.2d 953 (Fla. 1980) (Boyd, J., dissenting).