997 So.2d 1198 (2008)
Felipe DE LA HOZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D06-466.
District Court of Appeal of Florida, Third District.
December 24, 2008.
*1199 Bennett H. Brummer, Public Defender, and Maria E. Lauredo, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Angel L. Fleming, Assistant Attorney General, for appellee.
Before COPE and LAGOA, JJ., and PLEUS, JR., Associate Judge.
COPE, J.
Felipe De La Hoz appeals his conviction for second-degree murder. Because of jury instruction error, there must be a new trial.
The State charged defendant-appellant De La Hoz with second-degree murder of his former employee, Oscar Ruiz. The defense was self-defense.
The defendant contends that the trial court erred when it instructed the jury on the independent forcible felony exception to self-defense. The defense did not object at trial, but argues that the instruction constituted fundamental error. The State acknowledges that the trial court erred in giving the instruction, but argues that the instruction was not fundamental error under the circumstances of this case.
The defendant owned a feed store in Hialeah, Florida. The store sold feed for horses and pets. Ruiz was an employee of *1200 the store who loaded trucks and made deliveries.
From time to time, the defendant allowed store employees to use the defendant's personal truck. The defendant kept a firearm in the vehicle because he often carried cash from the store to the bank.
In February 2003, the defendant allowed Ruiz to use the truck on a Wednesday. On Thursday morning, the defendant determined that the gun was missing. On Friday, February 21, the defendant terminated Ruiz's employment and called the police to report the stolen gun.
The police came to the store and searched Ruiz's car for the gun. They did not locate it. Ruiz left.
At 6:00 p.m. the defendant was leaving the store with two employees. Ruiz drove up to the store in a van and stopped close to the front door. Ruiz was intoxicated, and it was later determined that he had a blood alcohol level of .19.
The defendant, and employee Morales, asked Ruiz to leave. Ruiz refused, and told the defendant he was going to be sorry for firing him. Ruiz also claimed that the defendant owed him money, but the defendant denied it.
Ruiz got out of the van and approached the front of the store. The defendant asked his employees to call 911. Employee Morales went inside to do so.
A fist fight began between the defendant and Ruiz. Ruiz knocked the defendant down twice. Ruiz ran to his van and stood next to the driver's seat with the door open. Ruiz said that he was going to kill and bury the defendant. The defendant and Ruiz then fought at the door of the van.
According to the defendant, Ruiz reached into his back pocket. Believing that Ruiz was reaching for a gun, the defendant drew his own gun and shot Ruiz twice. Ruiz fell to the ground with no firearm in his hands. The defendant called 911. Ruiz had no firearm in his van but did have a hammer on the front floorboard.
The court instructed the jury on self-defense in part as follows:
An issue in this case is whether the defendant acted in self-defense. It is a defense to the offense with which Felipe De La Hoz is charged if the death of Oscar Ruiz resulted from the justifiable use of force likely to cause death or great bodily harm.
The use of force likely to cause death or great bodily harm is justifiable only if the defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting another's attempt to murder him or any attempt to commit any forcible felony upon him.
....
However, the use of force likely to cause death or great bodily harm is not justifiable if you find Felipe De La Hoz was attempting to commit, committing, or escaping after the commission of a felony....
(Emphasis added).
There was no independent felony in this case. Both sides agree that this part of the self-defense instruction should not have been given.
The Florida Supreme Court has said that "the erroneous reading of this instruction constitutes fundamental error only when it deprives the defendant of a fair trial." Martinez v. State, 981 So.2d 449, 457 (Fla.2008) (emphasis in original). In this case it was undisputed that the defendant shot Ruiz, killing him. The entire issue in the case was whether he acted in self-defense. There was no independent *1201 forcible felony involved. Under the circumstances of this case, that part of the instruction negated the defendant's sole defense. See Johnson v. State, 963 So.2d 730, 731 (Fla. 3d DCA 2007); Grier v. State, 928 So.2d 368, 370 (Fla. 3d DCA 2006). We conclude that giving the instruction was fundamental error.
The defendant next contends that the trial court erred by denying his request for the then-existing "castle doctrine" instruction, which stated:
If the defendant was attacked in [his][her] own home or on [his][her] own premises, [he][she] had no duty to retreat and had the lawful right to stand [his][her] ground and meet force with force, even to the extent of using force likely to cause death or great bodily harm if it was necessary to prevent: death or great bodily harm to [himself] [herself] [another], or the commission of a forcible felony.
Fla. Std. Jury Instr. (Crim.) 3.6(f) (para. 10) (emphasis added).[1]
We conclude that the defendant was entitled to have this instruction given. "We have ... extended the `castle doctrine' privilege to employees in their place of employment, while lawfully engaged in their occupations." State v. James, 867 So.2d 414, 417 (Fla. 3d DCA 2003); Redondo v. State, 380 So.2d 1107, 1110 (Fla. 3d DCA 1980) ("Indeed, the prevailing rule throughout the country among those jurisdictions which, like Florida, have adopted a general duty to retreat doctrine is that a defendant is under no duty to retreat prior to using deadly force in self-defense when violently attacked in his home or business premises, which includes inter alia his place of employment while lawfully engaged in his occupation."); State v. Smith, 376 So.2d 261, 262 (Fla. 3d DCA 1979) ("As manager of the cafe, defendant was not obligated to retreat from his place of business.").
The Smith case is similar to this one. An intoxicated man entered a cafe and caused a disturbance, whereupon the defendant, who was the cashier/manager, attempted to eject the man and a struggle followed. Upon being separated, the intoxicated man threatened to kill the defendant and ran out of the door of the cafe to his truck which was parked about fifteen feet away. The defendant grabbed a gun and followed the man outside. Believing that the man was reaching into his truck for a gun, the defendant fired. This court held that under these circumstances, the defendant did not have a duty to retreat.
The State argues that the Smith case should be distinguished because the struggle in Smith began inside the place of business and continued outside. We do not believe that makes a difference regarding the duty to retreat. The defendant in Smith followed the intoxicated man into the parking lot. If there was no duty in Smith to retreat from the parking lot, then there is none in the present case. The defendant was entitled to the requested instruction.
The defendant next argues that the evidence was legally insufficient to establish the crime of second-degree murder and that on remand the defendant can only be retried on the necessarily lesser included offense of manslaughter. We disagree.
*1202 We must first address the issue of preservation. At trial the defendant made a general, boilerplate motion for judgment of acquittal. The defense did not make any particularized argument that the evidence was legally insufficient to establish the offense of second-degree murder.
In F.B. v. State, 852 So.2d 226, 230 (Fla.2003), the Florida Supreme Court said that "with two exceptions, a defendant must preserve a claim of insufficiency of the evidence through timely challenge in the trial court." According to the Court, the second exception to the preservation rule "occurs when the evidence is insufficient to show that a crime was committed at all." Id.
The Second and Fourth Districts have interpreted F.B.'s second exception to be applicable where the evidence is legally insufficient to prove the offense of which the defendant was convicted, but is legally sufficient to prove a lesser included offense. See Watson v. State, 974 So.2d 1168, 1169 (Fla. 4th DCA 2008) (evidence legally insufficient to establish battery on a law enforcement officer; remanded to trial court to adjudicate the defendant guilty of simple battery); Rodriguez v. State, 964 So.2d 833, 838 (Fla. 2d DCA 2007) (same). We conclude that the defendant is allowed to make his fundamental error argument at this time, and reject the State's argument to the contrary.
On the merits, we find no fundamental error. The evidence is clear that Ruiz was angry at having been fired and initiated the confrontation with the defendant just outside the defendant's store at the conclusion of the workday. There was a fistfight in which the defendant was twice knocked down, then got up and pursued Ruiz to the door of the van where the struggle continued. The defendant testified that Ruiz reached into his back pocket. Believing that Ruiz was reaching for a gun, the defendant shot Ruiz twice.
However, two witnesses testified that they never saw Ruiz reach for anything. Employee Vega testified that Ruiz said, "What are you going to shoot me?" and the defendant fired. Employee Vega acknowledged, however, that he may have told an investigating officer that Ruiz had his hand behind his back before the shooting.
Witness Diaz, who worked in the area, saw the encounter. Diaz also testified that he did not see Ruiz reach into his pocket with his right hand. Diaz acknowledged, however, that he was facing Ruiz' left side as he watched the events. According to the medical examiner, the first shot hit Ruiz in the left shoulder. The second shot struck Ruiz a little lower on the left side of the chest which would be consistent with Ruiz moving away.
After being shot, Ruiz said, "[Y]ou hit me, you hit me," and walked or ran to the rear of the van. The defendant followed him and fired again. This bullet struck the van and not Ruiz. The defendant maintained that he stumbled and the third shot was fired accidentally. The State contested this, citing the testimony of the firearm examiner regarding the amount of force required to pull the trigger.
Construing the evidence favorably to the State, see Soberon v. State, 545 So.2d 490, 491 (Fla. 3d DCA 1989), the evidence was legally sufficient to go to the jury on second-degree murder. Accepting the State's version of the facts, the defendant shot Ruiz after Ruiz taunted him, and without Ruiz reaching for a weapon. See id. at 492. After being shot, Ruiz turned and went to the rear of the van. The defendant followed him and under the State's version of the facts, intentionally fired again, with the shot hitting the van. Under similar facts, we have held such evidence to be legally sufficient to go to the *1203 jury on second-degree murder. See Barnes v. State, 993 So.2d 542 (Fla. 3d DCA 2008); Soberon, 545 So.2d at 492; Mahone v. State, 222 So.2d 769 (Fla. 3d DCA 1969).
In view of our reversal for a new trial, the defendant's final point on appeal is moot.
For the stated reasons, the judgment is reversed and the case remanded for a new trial.
Reversed and remanded.
NOTES
[1] This version of the standard jury instructions embodied the law of self-defense existing in 2003, at the time of the killing in this case. There have been subsequent changes in the self-defense law, but those changes do not apply retroactively to conduct occurring prior to the October 1, 2005, the effective date of the legislation. Smiley v. State, 966 So.2d 330, 337 (Fla.2007).